NEW ENGLAND WHITEWATER
CENTER, INC. et al.

v.

DEPARTMENT OF INLAND FISHER-
IES AND WILDLIFE et al.

Supreme Judicial Court of Maine.

Argued June 17, 1988.
Decided Oct. 12, 1988.

Cabanne Howard (orally), Deputy Atty. Gen., Augusta, for Dept. of Inland Fisheries.

Gordon H.S. Scott (orally), Eaton, Peabody, Bradford & Veague, Augusta, for Maine Whitewater–Intervenor.

Rufus E. Brown (orally), Drummond, Woodsum, Plimpton & MacMahon, Portland, for New England Whitewater.

Linda Smith Dyer (orally), Dyer & Goodall, Augusta, for John Palmer.

John Alsop (orally), Poland & Ketterer, Skowhegan, for North Country Rivers.

Before McKUSICK, C.J.,* and ROBERTS, WATHEN, GLASSMAN,* SCOLNIK,** CLIFFORD and HORNBY, JJ.

CLIFFORD, Justice.

The Department of Inland Fisheries and Wildlife (the "Department") and intervenors Downeast Rafting Co., Maine Whitewater, Inc., and Wilderness Rafting Expeditions, appeal from a judgment entered in the Superior Court (Kennebec County; *Alexander, J.*), sustaining consolidated appeals brought under M.R.Civ.P. 80C by the petitioners-appellees, New England Whitewater Center, Inc. ("New England Whitewater"), John Palmer d/b/a All Outdoors ("Palmer") and North Country Rivers, Inc. ("North Country Rivers"). We affirm the judgment in part and vacate in part.

This case involves a dispute over allocations issued by the Department for commercial whitewater rafting on the Kennebec and Penobscot Rivers. These rivers are extensively used by whitewater outfitting companies. Outfitters run passengers down the rivers on whitewater rafts in return for a fee.

The regulation of whitewater rafting in Maine began in 1983 with the passage of the Commercial Whitewater Rafting Act (the "Act"), P.L. 1983, ch. 502, now codified as 12 M.R.S.A. §§ 7361–7370–A (Supp. 1987). The Act's purpose was, in part, to minimize potential despoliation of heavily used rivers by limiting the number of passengers that commercial outfitters could ferry down the rivers. Two of the most popular rivers for whitewater rafting have been the Kennebec and the West Branch of the Penobscot, identified in the statute as West Branch Penobscot ("Penobscot"), because dams on those rivers are opened at pre-arranged times, causing an onrush of water that is ideal for rafting. The Act limits the total number of commercial passengers on those rivers. On weekends, the limit is 800 on Saturdays and no limit on Sundays for the Kennebec River and 560 per day on Saturday and Sunday for the Penobscot River. 12 M.R.S.A. § 7368.[1]

The Act also limits the total number of passengers each outfitter can carry per day to 80. 12 M.R.S.A. § 7369(2). The minimum daily number of passengers allocated to each outfitter, if an outfitter receives an allocation, is 20 for the Kennebec River and 16 for the Penobscot River. 12 M.R.S.A. § 7369(3). The Act further provides that allocations be granted to outfitters by the Department for periods of up to three years. 12 M.R.S.A. § 7369(5).

* McKusick, C.J., and Glassman, J., sat at oral argument and participated in the initial conference, but participated no further.

** Scolnik, J., sat at oral argument and participated in the initial conference, but retired before this opinion was adopted.

1. For a discussion of the statute, see Note, *Maine's Commercial Whitewater Outfitter Laws: "Maximizing Competition" or Destroying It?,* 11 Vt.L.Rev. 233 (1986).

Applications for the 1988, 1989 and 1990 allocation period were given to outfitters in late 1987. A public hearing was held by the Department on November 16, 1987, after the Department had received completed applications from the outfitters who sought allocations. During the public hearing, a tentative rating system for determining allocations was explained by the Department's Chief Warden, John Marsh. Marsh invited the outfitters present at the hearing to submit additional comments to him for up to 10 days after the hearing, and several outfitters did submit written comments. Preliminary allocations were distributed by the Department on November 27, 1987. In a memorandum dated December 14, 1987, Marsh detailed the scoring methods employed by the Department in determining allocations. This memorandum was followed by a final list of allocations dated December 16, 1987.

North Country Rivers, New England Whitewater and Palmer filed complaints for review of final agency action under M.R.Civ.P. 80C, and 5 M.R.S.A. §§ 11001 & 11002 (1979 & Pamph.1987). The complaints set forth a multiplicity of counts. The primary grounds relied on by the plaintiffs were that the Department's procedure in awarding allocations was arbitrary and capricious, violative of due process and illegal. The cases in this matter were consolidated. Maine Whitewater, Inc., Downeast Rafting Co. and Wilderness Rafting Expeditions, Inc., were allowed to intervene as respondents under M.R.Civ.P. 24(a). Briefs were subsequently submitted by the parties and the court orally delivered its decision on March 11, 1988. The court found that the plaintiffs had a protected property interest in their claims to allocations, and that the allocation procedures used by the Department did not afford the plaintiffs the process they were due under article I, section 6A of the Maine Constitution.[2]

In March, a hearing was held regarding requests for attorney fees by the prevailing parties. New England Whitewater's request for attorney fees was granted in the amount of $4,000, pursuant to 42 U.S.C. § 1988 (1981). Notices of appeal to this court were thereafter filed by the Department and the intervenors. In addition, North Country Rivers, Palmer and New England Whitewater cross-appealed. North Country Rivers and Palmer specifically appeal the denial of their requests for attorney fees.[3]

## I.

■ The Department initially argues that the plaintiffs have not preserved their due process claims, since they did not raise them in the administrative proceedings below. Generally, plaintiffs in a Rule 80C proceeding for review of final agency action are expected to raise any objections they have before the agency in order to preserve these issues for appeal. Issues not raised at the administrative level are deemed unpreserved for appellate review. *Oronoka Restaurant, Inc. v. Maine State Liquor Comm'n*, 532 A.2d 1043, 1045 n. 2 (Me.1987); *Bayside Enterprises, Inc. v. Maine Agricultural Bargaining Bd.*, 513 A.2d 1355, 1360–61 (Me.1986); *Hale v. Petit*, 438 A.2d 226, 232–33 (Me.1981). This rule applies even to unpreserved issues implicating constitutional questions. *Oronoka*, 532 A.2d at 1045 n. 2, (citing *Maine Real Estate Comm'n v. Kelby*, 360 A.2d 528, 530 (Me.1976)).

■ Several arguments are raised by the plaintiffs in response to the Department's contention of failure to preserve. Palmer and North Country Rivers argue that the plaintiffs should not be deemed to have failed to preserve the due process ques-

2. Me. Const. art. I, § 6A was recited as the basis for the court's determination of the due process violation. Because the court awarded attorney fees under 42 U.S.C. § 1988, we assume the court also found a violation of the similarly worded due process clause of the Fourteenth Amendment to the United States Constitution.

3. Interim whitewater allocations were approved by the court for the 1988 rafting season in order to permit commercial rafting to continue in 1988 while this appeal was pending. None of the parties has challenged these interim allocations in this appeal.

tions because it would have been fruitless to raise the issues and because they had no adequate forum in which to raise them. This contention is without merit. Although the Department reminded the parties of the procedural time constraints under which they were operating, the plaintiffs were not denied an opportunity to register legal objections at any time during the allocation proceedings. A full-fledged adjudicatory hearing was not held during the allocation process,[4] but a public hearing was held on November 16, 1987, and the plaintiffs were able to comment on the process at the hearing and submit written comments to the Department after the hearing. Moreover, the plaintiffs cite no authority for the proposition that the provision of an adjudicatory hearing was the only way they could have notified the Department of their objections to the procedure employed.

 In addition, New England Whitewater and Palmer argue that the Department itself failed to preserve the failure to preserve argument by not raising it at the Superior Court level. However, the record indicates that the failure to preserve issue was brought to the attention of the Superior Court in a timely manner by the intervenors in this case, both in their Superior Court brief and during oral argument. M.R.Civ.P. 24 provides the mechanism for intervention. Rule 24(a) permits intervention when an applicant seeking status as an intervenor claims an interest in the subject of the litigation and asserts that disposition of the action may impair his or her ability to protect that interest. *Donna C. v. Kalamaras*, 485 A.2d 222, 223 (Me.1984). A person who intervenes in a pending action becomes a party to that action and, as a general rule, has the same rights and liabilities as the original parties. 59 Am.Jur.2d

*Parties* § 170, at 667, § 178, at 677–78 (1987); 67A C.J.S. *Parties* § 85, at 841 (1978). Once the intervenors in this case were permitted to intervene they became party litigants in the case with the right to raise and litigate independent issues for the Superior Court to consider. *Spence v. Boston Edison Co.*, 390 Mass. 604, 459 N.E.2d 80, 85 (1983) (quoting *In re Raabe, Glissman & Co.*, 71 F.Supp. 678, 680 (S.D.N.Y. 1947)); *Williams v. Nussbaum*, 419 So.2d 715, 717 n. 1 (Fla.App.1982); *Teleco, Inc. v. Corporation Comm'n of State of Okla.*, 649 P.2d 772, 773 n. 2 (Okla.1982). Since the intervenors are aligned with the Department in this case, it was unnecessary for the Department to raise the failure to preserve argument once it was raised by the intervenors in the Superior Court. There is, moreover, no indication that the Department attempted to waive affirmatively or otherwise disassociate itself from the failure to preserve issue once it was raised by the intervenors in the Superior Court.[5] Because the Department did not waive the issue once it was raised by the intervenors, the issue was preserved for review with respect to the Department and the intervenors, all of whom, by definition, are party litigants in this case.

 New England Whitewater also argues that since the Department was not in a position to conduct any factfinding in this case, the failure to preserve rule should not be applied to the plaintiffs. However, this argument fails to apprehend a significant difference between the rule as it is applied to trial courts and the rule in the context of administrative proceedings. Whereas the former rule is based on a policy of allowing trial courts to narrow the focus of disputed legal issues through factfinding, the latter rule is premised on the broader doctrine of

---

**4.** *See infra* Part II of this Opinion.

**5.** An affirmative waiver is an intentional relinquishment of a known right. *Roberts v. Frank L. McKinney, Inc.*, 485 A.2d 647, 651 (Me.1984); 28 Am.Jur.2d *Estoppel and Waiver* § 154, at 36–37 (1966). Despite this court's prior and imprecise use of the term waiver to describe what is actually a procedural default or a litigant's failure to preserve an issue for review, compare *Poire v. Manchester*, 506 A.2d 1160,

1163–64 (Me.1986) *with Sewall v. Spinney Creek Oyster Co., Inc.*, 421 A.2d 36, 39–40 (Me.1980), a failure to preserve is not a waiver because it does not involve a deliberate abandonment of a known right. In this case, the Department did not raise the failure to preserve issue in the Superior Court, but the issue was preserved for review when it was raised by the intervenors and not affirmatively waived by the Department.

exhaustion of administrative remedies. *See Washington Ass'n for Television & Children v. F.C.C.*, 712 F.2d 677, 680–81 (D.C.Cir.1983); *Great Falls Comm. T.V. Cable Co., Inc. v. F.C.C.*, 416 F.2d 238, 239 (9th Cir.1969); *Hennesey v. S.E.C.*, 285 F.2d 511, 514–15 (3d Cir.1961); 4 K. Davis, *Administrative Law Treatise* § 26:7 (2d ed. 1983). Thus, the rule requiring that an issue be raised before the administrative agency in order for it to be preserved on appeal is not specifically based on a need for factfinding. Rather, it is based on "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants," *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952), and ensures that the agency and not the courts has the first opportunity to pass upon the claims of the litigants. *Hennesey*, 285 F.2d at 515.

■ New England Whitewater and North Country Rivers further contend that because the plaintiffs were not represented by counsel in the proceedings before the administrative agency, the failure to preserve rule should not be applied to them. We have repeatedly held that criminal or civil litigants are not afforded any special consideration because of their pro se status. *See, e.g., Brandis v. Brandis*, 515 A.2d 1153, 1154 n. 1 (Me.1986); *Gurschick v. Clark*, 511 A.2d 36, 36 (Me.1986); *State v. Dunn*, 480 A.2d 788, 790 (Me.1984). North Country Rivers cites *Sewall v. Spinney Creek Oyster Co., Inc.*, 421 A.2d 36 (Me.1980) in support of its position. However, *Sewall* is clearly distinguishable from the present case.[6] In any event, it does not appear that these plaintiffs were naive applicants who were exploited by the Department. The record reveals that all of the plaintiffs are business people and experienced whitewater outfitters who have participated previously in the Department's allocation process. Although the plaintiffs may have been better informed of their legal rights if they had retained counsel during the allocation proceedings before the Department, this would be true for any pro se litigant who chooses to forgo the assistance of counsel in an administrative or judicial proceeding. In addition, at least one outfitter chose to retain counsel during the allocation process. We do not find "exceptional circumstances" in this case that excused the plaintiffs from their affirmative obligation to raise their due process arguments in the course of the allocation proceedings before the Department. *MacCormick v. MacCormick*, 513 A.2d 266, 268 n. 2 (Me.1986).

The failure of the plaintiffs to assert any of the procedural objections they now raise denied the Department the opportunity to consider these objections and modify the allocation process and methodology used before the final allocations were issued in December 1987. Because of our duty to review the decisions of administrative agencies fairly and with due deference for their expertise in specialized matters such as this,[7] we cannot allow the plaintiffs to refrain initially from raising their current objections while the Department worked through the allocation process, and then raise these objections when they discovered

---

**6.** In *Sewall*, we considered the question of whether the plaintiffs in that case had waived or forfeited by procedural default their objections to the failure of an agency to swear witnesses in as required for adjudicatory administrative hearings held under the Maine Administrative Procedure Act (the "A.P.A."). *See* 5 M.R.S.A. § 9057(3) (1979). The plaintiffs were not represented by counsel at the hearing and failed to object to the omission of the oath. We considered factors such as the statutory mandate that an oath be administered, the particular importance of the oath in decisional jurisprudence and the absence of counsel, and held that the objection to the failure to administer the oath was not waived nor forfeited by procedural default. *Sewall*, 421 A.2d at 39–40. However, *Sewall* is an exception and not the rule with regard to special consideration being given to pro se litigants. The holding in *Sewall* was premised exclusively on a review of case law dealing with waiver of or forfeiture by procedural default of the oath requirement, and does not stand for the general proposition that pro se litigants are exempt from the obligation to preserve issues for appellate review.

**7.** *See Lucas v. Maine Comm'n of Pharmacy*, 472 A.2d 904, 907 (Me.1984); *Seven Islands Land Co. v. Maine Land Use Regulation Comm'n*, 450 A.2d 475, 479 (Me.1982); *Driscoll v. Gheewalla*, 441 A.2d 1023, 1029–30 (Me.1982); 5 K. Davis, *Administrative Law Treatise* § 29:16 (2d ed. 1984).

the results of the Department's process were not to their liking. Despite the statutory time constraints about which the Department reminded the parties, the record before us does not show that the Department would not have considered changing its procedure if it had been notified of procedural objections by the plaintiffs during the allocation process. *See City of Brookings Mun. Tel. Co. v. F.C.C.*, 822 F.2d 1153, 1163 (D.C.Cir.1987). Therefore, "considerations of practical justice" compel us to dismiss the plaintiffs' due process claims in this case under our principles of failure to preserve an issue for appellate review. *L.A. Tucker*, 344 U.S. at 36, 73 S.Ct. at 68. "[I]t would be contrary to 'orderly procedure and good administration' and unfair 'to those who are engaged in the tasks of administration' to decide an issue which [the Department] never had a fair opportunity to resolve prior to being ushered into litigation." *Dettmann v. United States Dep't of Justice*, 802 F.2d 1472, 1476 n. 8 (D.C.Cir.1986) (quoting *L.A. Tucker*, 344 U.S. at 36–37, 73 S.Ct. at 68–69).[8]

## II.

■ The Superior Court concluded that the Act did not require full compliance with all of the adjudicatory hearing provisions of the Maine Administrative Procedure Act (the "A.P.A.") 5 M.R.S.A. §§ 8001–11001 (1979 & Pamph. 1987). 12 M.R.S.A. § 7369(6) provides that allocations be awarded in accordance with the A.P.A., but refers to subchapter V of the A.P.A., 5 M.R.S.A. §§ 10001–10004, dealing with licensing, and not directly to subchapter IV of Chapter 375, 5 M.R.S.A. §§ 9051–9064, dealing with adjudicatory proceedings. In addition, the mandate in 12 M.R.S.A. § 7369(6) that the Department hold at least one public hearing in the allocation process is an indication that the elaborate adjudicatory proceedings of the A.P.A. were not intended to apply to the allocation process. Moreover, in view of the time constraints involved in the allocation process, it would

be most difficult for the Department to comply with the A.P.A.'s adjudicatory hearing requirements and determine the allocations in a timely manner. Those A.P.A. adjudicatory requirements include notice to all interested parties, 5 M.R.S.A. § 9052; participation of any person or party, limited or denied only with a written explanation by the agency, 5 M.R.S.A. § 9054(3); and the right of every party "to present evidence and argument on all issues and at any hearing to call and examine witnesses and to make oral cross-examination of any person present and testifying," 5 M.R.S.A. § 9056(2).

In making the allocations, the Department must distribute, collect and analyze applications that are, in part, based on performance of outfitters during the most recent whitewater season and then finalize the allocations by December 1. 12 M.R.S.A. § 7369(6). Over a dozen whitewater outfitters applied for allocations in 1987. The A.P.A. hearing provisions, if applied to the allocation process, with each applicant afforded a full opportunity to present evidence and cross-examine witnesses, would present the Department with a most difficult, if not impossible, task to complete before December 1. The inevitable result would be extension of the process beyond the statutory deadline.

We must assume that the legislature did not intend an unreasonable result when it established the December 1 deadline. *See National Council on Compensation Ins. v. Superintendent of Ins.*, 481 A.2d 775, 779 (Me.1984); *Schwanda v. Bonney*, 418 A.2d 163, 166 (Me.1980). Reading the Act as a whole, and in light of its evident purpose to provide an expeditious means for the allocation of a scarce resource, we agree with the Superior Court that the legislature did not intend to include the full adjudicatory hearing requirements of the A.P.A. as part of the allocation process. *See Seven Islands Land Co. v. Maine Land Use Regulation Comm'n*, 450 A.2d 475, 480 (Me.1982); *Hale*, 438 A.2d at 231.

---

**8.** Because we dismiss the plaintiffs' due process claims on grounds of failure to preserve the issue for appellate review, we have no need to address the issue of attorney fees, which arises out of the due process claims under 42 U.S.C. §§ 1983, 1988.

### III.

■ Plaintiffs further contend that the rulemaking provisions of the A.P.A., 5 M.R.S.A. §§ 8051–8059 (1979 & Pamph. 1987), were applicable to the rules governing the allocation process, and that the resulting allocations are invalid for failure of the Department to comply with those provisions.

The Superior Court did not address specifically the claim of non-compliance with the rulemaking requirements of the A.P.A., but concluded that the allocation process was flawed because the criteria used in awarding the allocations were not known to the parties in advance, and violated their constitutional rights of due process.

Having concluded that the constitutional claims of the plaintiffs were not properly preserved at the agency level, we do not address them, but conclude that the rulemaking provisions of the A.P.A. were applicable to these proceedings, and because they were not complied with, the allocations are necessarily void.

12 M.R.S.A. § 7369(7) [9] sets out the general criteria to be used by the Department in determining the whitewater rafting allocations. Section 7369(6) authorizes the Department to promulgate rules "to facilitate the allocation process." Rules were adopted by the Department, last amended in 1985, in part repeating the statutory criteria. Rule 14.07(C) assigned point values to each of the statutory criteria as follows:

1. Outfitter's experience on Maine rivers:
 a. On the river to be allocated — 25
 b. On other rivers in Maine — 10
2. Outfitter's experience on rivers outside of Maine — 10
3. Safety record — 25
4. Financial investment — 15
5. Services — 15
6. Performance meeting past allocations — 25
7. Other factors — 5

**9.** 12 M.R.S.A. § 7369(7) reads as follows:

Whitewater rafting allocation criteria. The department shall review proposals and award allocations so that, taken as a whole, allocations provide a level and quality of service which satisfies the allocation system goals of this section and contribute to meeting the river management objectives of section 7364.

A. Individual proposals shall be evaluated according to the following specific criteria:

(1) The experience of the outfitter and any employee in providing whitewater trips on the river or rivers for which the allocation is sought, including, but not limited to, such factors as the number of trips and passengers carried, length of time as an outfitter, safety record and experience of guides and staff. The company experience of only one company within an affiliated group at the time of that experience may be counted as company experience for purposes of allocation;

(2) The experience of the outfitter and any employee in providing whitewater trips on rivers other than those for which the allocation is sought, including, but not limited to, such factors as the number of trips and passengers carried, length of time as an outfitter, safety record and experience of guides and staff. The company experience of only one company within an affiliated group at the time of that experience may be counted as company experience for purposes of allocation;

(3) The safety record of the outfitter and any employee in whitewater outfitting or similar enterprises;

(4) The financial investment of the outfitter in equipment, training, insurance, facilities and services related to commercial whitewater rafting trips;

(5) Ability of the outfitter to serve the interests of the State by providing safe, economical, environmentally sound commercial whitewater trips on the particular river or rivers;

(6) Ability of the outfitter to serve the interests of the consuming public by providing a type of trip experience that is in the public interest as determined by the department;

(7) When allocations are considered for subsequent years, the performance of the outfitter in providing the services proposed for the previous allocations and compliance with the terms of the allocations; and

(8) Other matters which in the judgment of the department relate to orderly business development, including growth, new entry or extreme hardship on the part of an applicant.
....

These previously accepted rules, including Rule 14.07(C), were in place at the time of the commencement of this allocation process to determine the 1988–90 allocations.

As the allocation process moved forward, the Department disclosed the scoring criteria and actual calculations being used in awarding the allocations. In doing so, the Department deviated from Rule 14.07(C) by eliminating the category of outfitters' experience in rivers outside of Maine,[10] with 5 of the 10 points being added to the category dealing with experience of outfitters on Maine rivers subject to allocation restrictions, and 5 points added to the experience on all other Maine rivers category.

Also, during the allocation process, the Department established a minimum 65 point scoring system,[11] and after awarding the minimum allocations to all applicants receiving 65 points or more, beginning with the highest scoring outfitters, and in descending order, all remaining allocations were made until the carrying capacities of the rivers were met. Lower scoring outfitters were denied allocations based on the limited capacity of the rivers. It is the position of the plaintiffs that these scoring criteria were, in fact, rules not properly promulgated and thus void, invalidating the allocations.

The A.P.A.'s definition of "rule" reads, in pertinent part, as follows:

A. "Rule" means the whole or any part of every regulation, standard, code, statement of policy, or other agency statement of general applicability, including amendment, suspension or repeal of any prior rule, that is or is intended to be judicially enforceable and implements, interprets or makes specific the law administered by the agency, or describes the procedures or practices of the agency....

B. The term does not include:

(1) Policies or memoranda concerning only the internal management of an agency or the State Government and not judicially enforceable;

. . . .

(4) Any form, instruction or explanatory statement of policy which in itself is not judicially enforceable, and which is intended solely as advice to assist persons in determining, exercising or complying with their legal rights, duties or privileges.

5 M.R.S.A. § 8002(9) (Pamph.1987).

It is the contention of the Department and the intervenors that the Department made no changes in the rules, but rather, that the criteria used in making the allocations and disclosed during the allocation process were only "explanatory statement[s] of policy" intended to assist the applicants in the allocation process under Section 8002(9)(B)(4).

The Department is correct in that actual calculations demonstrating how an applicant's score was reached were merely "explanatory" statements. However, because the basic criteria used in the scoring, including the change made to Rule 14.07(C), "make[ ] specific the law administered by the [Department] [and] describe[ ] the procedures or practices of the [Department]," they are "rules" within the meaning of 5 M.R.S.A. § 8002(9)(A). The Department in its notices advertised it was about to make changes in the "rules" and did, in fact, change what it had previously formally adopted as Rule 14.07(C).[12] That change to Rule 14.07(C) resulted in more consideration being given to experience on Maine rivers, an advantage to outfitters with existing large allocations. The minimum 65 point system, and full requested allocations being awarded to the applicants scoring the most points until the carrying capacities of the rivers were met, constituted a significant part of the scoring process and were more than advisory or explanatory. They were judicially enforceable in that they lim-

---

**10.** The Department determined that it was impossible to assess this category accurately.

**11.** If an outfitter received 65 points or more in the scoring, a minimum allocation of 20 passengers per day on the Kennebec and 16 on the

Penobscot was guaranteed. An outfitter scoring less than 65 points received no allocations.

**12.** 5 M.R.S.A. § 8002(9)(A) includes in its definition of "rule" any amendment of any prior rule.

**64**

ited the Department's discretion in awarding allocations, and were "rules" within the meaning of 5 M.R.S.A. § 8002(9).

Although some of the technical requirements of rule changing under the A.P.A. have been complied with,[13] the record does not reflect that the Department adopted the scoring criteria as part of its rules, as is required by 5 M.R.S.A. § 8052(7)(A), or even considered that its rules were changed in any way; or that the Attorney General approved any rule changes, as required by section 8052(7)(B) and 8056(1)(A); or that there was a filing of rules changes with the Secretary of State, as required by section 8056(1)(B). The failure of the Department to comply with the rulemaking provisions of the A.P.A. is a procedural defect that we cannot overlook even should we conclude there is no showing of prejudice, *In re Maine Clean Fuels, Inc.*, 310 A.2d 736, 744 (Me.1973), since 5 M.R.S.A. § 8057 provides that such changes in the rules as were made by the Department here are "void and of no legal effect." *Town of Wiscasset v. Board of Envtl. Protection*, 471 A.2d 1045, 1048 (Me.1984). Since the whitewater allocations are based on the void rule changes, the allocations are invalid. We must remand this matter to the Department for the purpose of determining the whitewater allocations based on rules, including basic scoring criteria, adopted under provisions of the A.P.A. and in place at the outset of the allocation process.

Because we remand to the Department to begin again the allocation process, we do not address the specific contentions of plaintiffs that the Department failed to follow its own specific criteria in awarding the allocations.

The entry is:

Judgment of the Superior Court affirmed in part and vacated in part.

Remanded to the Superior Court with instructions to remand to the Department of Inland Fisheries and Wildlife for further proceedings consistent with the opinion herein.

All concurring.

---

**13.** The Department gave notice that it was to make changes in the rules, *see* 5 M.R.S.A. § 8052(2); considered comments of outfitters before adopting criteria, *see* section 8052(4); and in its memorandum of December 14, 1987, explained the criteria being used, *see* section 8052(3).