STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-00-18

JESSICA BELANGER,

Plaintiff

v.

DECISION AND ORDER

COMMISSIONER, MAINE
DEPARTMENT OF
HUMAN SERVICES,

Defendant

This matter is before the court for review of final agency action under the provisions of M.R. Civ. P. 80C. The underlying facts are as recited in this court's Decision and Order of August 31, 2000, dismissing an independent claim brought with the 80C appeal. A recitation of facts sufficient to explain this decision will be reiterated, however.

Petitioner was a CNA employed at a nursing facility for four years prior to termination in February, 1999. She was accused by the Division of Licensing and Certification, Bureau of Medical Services, of falsifying records of vital signs of residents at the nursing facility. A fair hearing was held on two dates before a hearing officer whose jurisdiction was conferred by special appointment of the Commissioner. The precise issue referred to the Office of Administrative Hearings by the order of reference stated the issues to be examined as follows:

> Should the Maine Registry of Certified Nursing Assistants be annotated to show that the State Survey Agency substantiated an allegation that Jessica Belanger neglected residents of Hawthorne House between March 14, 1995, and February 17, 1999?

The rules concerning the Maine Registry of Certified Nursing Assistants are contained in the "Rules and Regulations Governing the Functioning of the Maine Registry of Certified Nursing Assistants." Under these rules, respondent State agency charged that Ms. Belanger's vital signs falsifications constituted "neglect." "Neglect" under the rules is defined in section B, 7:

> Neglect means a failure by inattentiveness, carelessness or omission to provide for a person's needs, that threatens a person's health or welfare by physical or mental injury.

The hearing examiner made findings of fact that the petitioner falsified records of vital signs of approximately five or six different residents during an approximate four-week period ending in mid-February of 1999. The hearing examiner further found that the petitioner falsified the vital signs only when the charge nurse on duty would not help her obtain the vital signs that she had had insufficient time to obtain by the end of her regular shift and that petitioner only falsified the vital signs on days when she was working a double shift and the falsifications occurred only at the end of her first shift. The hearing examiner further found that "those residents whose vital signs Ms. Belanger falsified were not residents whom she felt were in need of immediate attention (i.e., they were not 'sick'), but rather, only those residents for whom taking vital signs was routine (i.e., 'for paperwork purposes')." Finally, in addition to other relevant findings of fact, the hearing examiner concluded the following:

> 10.    No resident's health or welfare was actually negatively affected by the vital signs falsifications.
> 11.    No resident's health or welfare was actually threatened.

As a result of these hearings and findings, the hearing officer recommended that the action proposed by the Division of Licensing and Certification be reversed, that the Maine Registry of Certified Nursing Assistants not be annotated to show that the State

2

Survey Agency substantiated an allegation that Jessica Belanger neglected residents of Hawthorne House between March 14, 1995, and February 17, 1999. The analysis by the hearing examiner, having concluded little dispute of fact, explained that while this otherwise competent, reliable and caring CNA's actions did constitute a failure to provide for persons's needs, "Ms. Belanger did not allow any resident whose vital signs she had falsified to go without attention: she observed those residents and took and recorded the vital signs of those residents soon after such vital signs were actually due (she did so soon into her second shift, which immediately followed her first shift)."

The Commissioner reviewed the recommended decision of the hearing officer and accepted all findings of fact except numbers 10 and 11. He declined to adopt the recommended decision and instead, adopted:

The following interpretation of the pertinent statutes and regulations:

(1)     The falsifications of vital signs of an unspecified number of residents over an approximate four month period of time is inexcusable and neglect per se.
(2)     The failure by omission to provide for a person's needs (in this case, the taking and recording of timely and accurate vital signs), threatens a person's health or welfare by physical injury.
(3)     The fact that there is no evidence that a resident's health or welfare was actually negatively affected is of no consequence.

The petitioner's argument centers on the refusal by the Commissioner to accept findings of fact without making his own findings of fact based upon competent evidence. She asserts that doing so is a violation of the Administrative Procedures Act and federal and state due process. Ms. Belanger argues that the Commissioner essentially changed the findings of fact and that the decision is not supported by substantial evidence. Fundamentally, she argues, that a finding of harm or threat of harm is required by the definition of neglect under the regulations promulgated by

3

authority of statute and that, therefore, the Commissioner disregarded an essential element of the definition.

The respondent, in its brief, argues that the Commissioner found "as a matter of law" (Brief, p. 5) that the falsification was neglect per se and threatens a person's health or welfare by physical injury. He argues that was merely interpreting the Registry's definition of neglect and he was not required to make a fact-specific finding in this regard. Respondent argues he is under no obligation to examine each and every part of the evidence but simply to satisfy himself as long as he familiarizes himself with evidence sufficient to ensure himself that all statutory criteria has been satisfied. He argues he has a right to overrule the hearing officer's finding of credibility and argues that that is not relevant because "it is the act itself that is neglect regardless of whether the petitioner credibly admits." (Brief, p. 10). Finally, the respondent argues that the decision was not affected by error of law, is supported by substantial evidence on the whole record, and is not a violation of due process.

What was the "rule" in 1999 when the petitioner falsified the records? Her name on the Registry could be annotated to show that she neglected residents if she falsified records as a matter of neglect. Neglect meant that by her inattentiveness, carelessness or omission to provide for the person's needs, she threatened a person's health or welfare by physical or mental injury. Under that rule, the petitioner conducted herself and became subject to proceedings by the Department. The hearing examiner, complying with all due process requirements, determined the issue to be decided under the same rule. He took evidence under that rule, he reached conclusions of fact under that rule, and he made a recommendation under that rule. However, when the Commissioner received the decision, he decided, "as a matter of law" that the rule says

4

something different than what it actually states, i.e., even though the rule says that neglect requires a finding of threat to a person's health or welfare, that isn't really so because, in the case of falsification of vital signs, whether a person was actually threatened is irrelevant. The standard of conduct by a CNA under those circumstances moved from a standard of objectivity as to result to a standard of strict liability and compliance, (*malum prohibitum* to *malum in se*?) Was the petitioner required to participate in a hearing where the "rule" contained a requirement of a finding of threat of injury to a person when its interpretation was completed after the fact? Has the petitioner been afforded due process in participating in a hearing where the "interpretation" of the rule was its plain language?

In respondent's brief, reference is made to *New England Whitewater Center, Inc. v. Department of Inland Fisheries & Wildlife, et al.*, 550 A.2d 56 (Me. 1998). In that case, the plaintiffs complained that the respondent state agency did not comply with the rulemaking provisions of the APA. The appellant court notes that the trial court did not address the claim of noncompliance with the rulemaking requirement because it concluded that "the allocation process was flawed because the criteria used in awarding the allocations were not known to the parties in advance and violated their constitutional rights of due process." *Id* at 62. The court went on to decide that the constitutional claims had not been properly preserved at the agency level but did conclude that there was a violation of the rulemaking provisions of the APA. In the present case, the petitioner correctly observes that she could not raise the constitutional issues at the hearing level, or at the agency level, because the issue did not present itself until after the Commissioner had rejected two central elements of the findings of fact and made a ruling "as a matter of law." Nevertheless, the observation of the Superior

5

Court in *New England Whitewater* comes to mind in the instant case because this petitioner would have no way of knowing that the criteria for a determination of a violation of the rule against neglect was a per se rule not requiring actual finding of threat to the patient. This causes this court to examine the real effect of the Commissioner's decision in this case.

The APA, 5 M.R.S.A. § 8001 *et seq.* defines a "rule" as:

(A)   The whole or any part of every regulation, standard, code, statement of policy, or other agency statement of general applicability, including the amendment, suspension or repeal of any prior rule, that is or is intended to be judicially enforceable and implements, interprets or makes specific the law administered by the agency, . . .

(B)   The term does not include: (1) . . . (2) . . . (3) decisions issued in adjudicatory proceeding; . . .

5 M.R.S.A. § 8002(9)(A) & (B). Is the decision by the Commissioner simply a decision issued in an adjudicatory proceeding or is it a statement of general applicability that is intended to be judicially enforceable and makes specific the law administered by the agency?

Examining this decision, in light of the due process rights of the petitioner and the effect on the definition of "neglect" as it is specifically provided within the rule, this court determines the Commissioner's decision to be the attempt to establish a rule, a rule of strict liability which is to be specifically judicially enforced which otherwise amends or makes an interpretation of a rule contrary to its plain language. In such a case, it is the responsibility of the Commissioner to engage in formal rulemaking under the Administrative Procedures Act which did not take place in the instant case.

The Commissioner is under no obligation to accept the recommendation of the hearing examiner or even to interpret the evidence in the same manner as that of the

6

examiner. The Commissioner is free to interpret the rules that are promulgated under his administration. The plain language of the rule that existed at the time of the incidents clearly required the actions of the subject to have an effect in order to come within the definition. Even the Commissioner argues that his decision was based upon "a matter of law." Creating such a law is creating a rule and to suggest that such was the law prior to this decision is completely without basis on the evidence in this record.

The entry will be

The decision of the Commissioner of the Department of Human Services is REVERSED for violation of the Administrative Procedures Act, 5 M.R.S.A. § 8051 *et seq.*

Dated: August 2ₚ, 2001

Donald H. Marden
Justice, Superior Court

7

| Date Filed | 4/5/00 | Kennebec | Docket No. | AP00-18 |
| | | County | | |

Action ___ 80C ___

# J. MARDEN

Jessica Belanger      vs.   Comm. Me Dept of Human Services

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Patricia Ender Esq<br>Pne Tree Lgl Asst<br>39 Green St PO Box 2429<br>Augusta Me 04338 | Marci A Alexander AAG<br>6 State House Sta<br>Augusta Me 04333<br>Rennee Guignard, AAG co-counsel |

| Date of Entry | |
|---|---|
| 4/5/00 | Petition for review of final agency action rule 80C M.R. Civ.P. and independent claim for relief filed. s/Ender Esq |
| 04-14-00 | Petitioner's Motion to Specify Future Course of Proceedings with Supporting Memorandum and Proposed Specification of Future Course of Proceedings, filed.<br>Proposed Order, filed. |
| 4/20/00 | Letter entering appearance filed. s/Alexander AAG |
| 4/27/00 | Answer, filed. s/Alexander, AAG |
| 5/1/00 | Respondent's Unopposed Motion for Extension of Time to Respond to Petitioner's Motion to Specify, filed. s/Alexander, AAG |
| 5/2/00 | UNOPPOSED MOTION FOR EXTENSION, Studstrup, J.<br>Motion granted and time to respond enlarged to 21 days after filing of responsive pleading to amended complaint.<br>Copies mailed to attys of record. |
| 5/12/00 | Certified record filed. s/Alexander AAG |
| 5/16/00 | Copy of letter to Ms Alexander regarding a transcript of a hearing filed. s/Ender Esq |
| 5/18/00 | Letter regarding the record filed. s/Alexander AAG |
| ------- | Motion to Amend Petition for Review of Final Agency Action: Rule 80C, M.R.Civ.P. & Independent Claim fo Relief, filed. s/Ender, Esq.<br>Proposed Order, filed.<br>Certificate of Service, filed. s/Ender, Esq.<br>Amended Petition for Review of Final Agency Action: Rule 80C, M.R.Civ.P. & Independent Claim for Relief, filed. s/Ender, Esq. |
| 5/24/00 | MOTION TO AMEND, Marden, J.<br>Without objection the petitioner's motion to amend the petition is granted<br>Copies mailed to attys of record. |