STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2005 JAN 12 P 2: 49

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-03-05
REC - CuM - 1/12/2005

A. MICHELLE COBB,

Plaintiffs

v.

ORDER ON 80C APPEAL

STATE OF MAINE,
BOARD OF COUNSELING
PROFESSIONALS LICENSURE
            Defendants.

## FACTUAL BACKGROUND

This matter was previously before the court on petitioner's first 80C petition for judicial review of a Decision and Order of December 26, 2002 of the State of Maine Board of Counseling Professionals Licensure (the Board). To the extent that it remains unchanged, the following factual background is taken from this court's order, dated December 22, 2003 in which the court remanded the case to the Board.

Petitioner, a Licensed Professional Counselor, counseled the two minor sons of a divorced couple. In doing so, petitioner diagnosed the children with certain conditions and submitted forms to the children's father's insurance company in which she filled out diagnostic codes taken from the Diagnostic and Statistical Manual (4th edition) (DSM-IV). In her submissions to the insurance company, Petitioner filled in the "Diagnoses or Nature of Illness" portion with the numbers 309.3 and 313.81 from DSM-IV. Those numbers denote conditions known as "Adjustment Disorder with

Disturbance of Conduct" and "Oppositional Defiant Disorder," respectively. The insurance company paid petitioner for this counseling. Subsequently, the parents of the children filed a complaint on March 21, 2001, regarding the Petitioner's diagnoses of the children. An investigation took place resulting in charges being brought against Petitioner for diagnosing the children's mental health conditions in violation of 32 M.R.S.A. § 13858 (2002)[1], and for fraud and deceit.

After lengthy administrative hearings, the Board dismissed the fraud and deceit charges. The Board found, however, that Petitioner violated section 13858, disciplining her by censure, fine, and thirty hours of supervision. Petitioner then sought judicial review of that final agency action pursuant to M.R. Civ. P. 80C. After considering the parties' arguments, this court held, *inter alia*, that the Board's interpretation of 32 M.R.S.A. § 13858 was correct such that Petitioner, as an LPC, was not authorized under the statute to diagnose and treat mental health disorders. *Cobb v. Me. Board of Counseling Professionals Licensure*, PORSC-CV[sic]-03-05 (Me. Super. Ct., Cumb. Cty., Dec. 22, 2003). Furthermore, because it concluded that the Board's interpretation of the statute comported with the statute's plain language, this court rejected petitioner's argument that the Board, in disciplining her, had engaged in unlawful rulemaking. This court found that in disciplining petitioner under the statute, the Board had simply engaged in well-supported statutory interpretation and application rather than having created a "regulation, standard, code, statement of policy, or other agency statement of general applicability," 5 M.R.S.A. § 8002(9), in an adjudicative proceeding. *See Cobb v. Me. Board of Counseling Professionals Licensure*, PORSC-CV[sic]-03-05 (Me. Super. Ct., Cumb. Cty.,

---

[1] Section 13858 provides that there are three specific clinical licenses offered by the Board which have equivalent clinical status. The statute further states that clinical status authorizes an individual to diagnose and treat mental health disorders. The three specific licenses, licensed clinical professional counselor, licensed pastoral counselor, and licensed marriage and family

Dec. 22, 2003). This court also recognized, however, that the statute does not define "mental health disorder" and consequently found that the Board's exclusion of testimony regarding the meaning of "mental health disorder" as used in section 13858 was error. Because it is necessary to understand what the term "mental health disorder" means under the statute, before deciding whether petitioner did in fact diagnose mental health disorders, this court remanded the case to the Board for additional evidence regarding the meaning of that term and whether the conditions Petitioner diagnosed constituted "mental health disorders." *Id.*

In accordance with this court's order, the Board held a hearing on June 21, 2004 during which it considered testimony regarding the meaning of the term "mental health disorder." Following that hearing the Board concluded that the conditions deemed "mental health disorder" in the DSM-IV may be considered "mental health disorders" under section 13858. It also found that the DSM-IV designations referenced by the Petitioner in her treatment notes and submissions to the insurance company, constituted "mental health disorders." Consequently, the Board again found that petitioner violated section 13858 by diagnosing mental health disorders without being licensed to do so.

Petitioner now seeks judicial review of the Board's decision.

## DISCUSSION

As stated in this court's December 22, 2003 order, this court will reverse or modify the administrative decision of the Board only if the administrative findings, inferences, or conclusions are:

---

therapist, are authorized by statute to diagnose and treat mental health disorders. *See* 32 M.R.S.A. § 13858. Licensed professional counselor is not included in that list.

3

(1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by bias or error of law; (5) Unsupported by substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion.

*Hale-Rice v. Maine State Ret. Sys.*, 1997 ME 64, ¶ 8, 691 A.2d 1232, 1235 (quoting 5 M.R.S.A. § 11007 (1989)). The agency's interpretation "is entitled to great deference and will be upheld unless the statute plainly compels a contrary result." *Centamore v. Dep't of Human Services*, 664 A.2d 369, 370-71 (Me. 1995) (internal quotation omitted). The Superior Court should not second-guess the administrative decision of the agency unless "the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering, Inc. v. Dep't of Prof'l & Fin. Regulation*, 593 A.2d 1050, 1053 (Me. 1991).

Petitioner argues that both the original decision of the Board and the decision made on remand from this court should be vacated for a number of reasons. Petitioner argues: (1) that the Board's interpretation of section 13858 to prohibit an LPC from diagnosing mental health disorders was arbitrary and capricious; (2) that the Board prosecuted the petitioner on the basis of rules not adopted pursuant to the Maine Administrative Procedure Act; (3) that the Board is estopped from prosecuting the petitioner for diagnosing mental health disorders because the Board's own conduct induced her to act and she reasonably relied, to her detriment, on the Board's conduct; (4) that prosecution of the petitioner by the Board violated her right to due process; (5) that the Board's imposition of costs against petitioner was arbitrary and capricious; and (6) petitioner should be awarded attorney's fees under 42 U.S.C. § 1988.

Because the court addressed many of petitioner's arguments in its December 22, 2003 order, the only new argument appropriately before the court at this time relates to

whether the Board engaged in unlawful rulemaking.[2] Petitioner's primary new argument in support of reversing the Board's decision on remand is that by defining "mental health disorder" by reference to the DSM-IV, the Board engaged in unlawful rulemaking. She maintains that the Board's adoption of the DSM-IV's definition was an adoption of a standard of general applicability that was intended to be judicially enforceable. Therefore, according to the petitioner, because the Board did not comply with the procedures required under the Maine Administrative Procedure Act for the adoption of new rules, the Board's decision on remand should be reversed. *See* 5 M.R.S.A. §§ 8002(9) & 8052.

Pursuant to this court's December 22, 2003 order, on remand the Board was to consider evidence relating to the meaning of the term "mental health disorder" as contained in section 13858 and was to determine (1) what that term means under the statute; and (2) whether the diagnoses made by the petitioner constituted diagnoses of mental health disorders. Consistent with the dictates of this court's order, the Board held a hearing and considered testimony from the State's expert witness, Cheryl Davis, Licensed Clinical Professional Counselor and from the petitioner's expert witness, Dr. John Sutton, Licensed Clinical Professional Counselor.

A review of the transcript of the Board hearing reveals that Ms. Davis testified that the definition of "mental health disorder" provided in the DSM-IV is generally accepted across the mental health professions. Remand Record at 60-63. She further testified that the DSM-IV is the authoritative and exclusive diagnostic tool employed across all fields of mental health care professionals. *Id.* at 80. Ms. Davis also explained

---

[2] Because petitioner failed to raise her estoppel argument at the original hearing before the Board and because this court denied her motion to amend the Amended Petition to include a count for equitable estoppel on November 23, 2004, she has not preserved this argument. *See New England Whitewater Ctr. v. Dep't of Inland Fisheries and Wildlife,* 550 A.2d 56, 58-59 (Me. 1988)

that the reason why petitioner could enter the DSM-IV numbers as the diagnoses on the insurance forms, without further explanation, was because the DSM-IV is the universally accepted, sole diagnostic tool for mental health disorders and every mental health care provider, as well as insurance providers, would understand both their source and meaning. *Id.* at 84-85. She also testified that the conditions petitioner diagnosed are designated in the DSM-IV as, and widely understood to be, mental health disorders. *Id.* at 87-88.

A review of the transcript of the hearing also reveals that Dr. Sutton testified that, contrary to Davis's testimony, the DSM-IV is not synonymous with the definition of "mental health disorder." *Id.* at 95. Instead, Sutton testified that, from his perspective and that of others in the field, there are a variety of different definitions of mental health disorders distinct from those provided by the DSM-IV. He testified further that the DSM-IV is over-inclusive in that it categorizes as "mental disorders" conditions that he, and others in the field, consider indicative of behavioral variations rather than "disorders." *Id.* at 97-101. Dr. Sutton also testified that under alternative definitions, the diagnoses that petitioner made are not severe enough to constitute "mental health disorders." *See id.* at 100. Dr. Sutton did recognize, however, that despite some disagreement within the mental health care field about the accuracy and scope of the DSM-IV designations, the DSM-IV is recognized as the most influential source for diagnostic codes and diagnostic tools. *Id.* at 114. He further conceded that he uses the DSM-IV to diagnose patients in his private practice and that he uses the DSM-IV as a source for the diagnoses that he communicates to insurance companies and to other treaters. *Id.* at 116 & 120.

Although the court recognizes some disagreement in the testimony of the parties' expert witnesses, it finds that the Board's decision is supported by the

substantial evidence on the record. *See International Paper Co. v. Board of Envtl. Protection*, 1999 ME 135, ¶ 29, 737 A.2d 1047, 1054. While it may be true that designation and diagnosis of "mental health disorders" is a complex task resistant to inflexible categorization, both Ms. Davis and Dr. Sutton agreed that the universally recognized short-hand provided by the DSM-IV is invaluable to mental health care practitioners. Both expert witnesses testified that the DSM-IV is widely utilized by mental health care practitioners and insurance providers alike. Neither witness suggested any other diagnostic method or definition of "mental health disorders" that is as widely accepted or universally understood as is the DSM-IV. Therefore, in accordance with the applicable standard of review, this court affirms the Board's finding that the DSM-IV is an authoritative guide in discerning the meaning of "mental health disorder" as that term appears in section 13858. There is also substantial evidence on the record supporting the Board's finding that because the DSM-IV designates the conditions diagnosed by the petitioner as mental health disorders, petitioner violated 32 M.R.S.A. § 13858.

Finally, with regard to whether the Board's reference to the DSM-IV in interpreting the meaning of "mental health disorder" constitutes unlawful rulemaking, the court concludes that it does not. On remand, the Board followed the directions given it by this court in its December 22, 2003 order. Following an additional administrative hearing the Board found, in accordance with this court's order, that the DSM-IV is an authoritative diagnostic tool and that its designations of conditions constituting mental health disorders are universally recognized and understood. It found that petitioner utilized the diagnostic codes provided by the DSM-IV in making the diagnoses at issue in this case and that those diagnoses constituted mental health disorders under the DSM-IV paradigm. Although the language used by this court in its

7

December 22, 2003 order may well have been overly broad, all that the court directed the Board to do was clarify the basis for its initial finding that, *in this case,* the conditions petitioner diagnosed were "mental health disorders." The court did not intend for the Board to promulgate a new, generally applicable rule nor did the Board do so. Instead, the Board simply concluded that based on the evidence, the DSM-IV's designation of the conditions diagnosed by petitioner is more authoritative than other possible designations of those conditions. It also found that given the petitioner's use of the DSM-IV in her diagnoses and the broad influence of the DSM-IV in the mental health professions, the Board may consult that text in order to determine whether petitioner violated section 13858. This action by the board was not unlawful rulemaking but was, rather, an appropriate application of the statute to the particular facts and evidence presented to it in this case.

In the event that the Board seeks to adopt the DSM-IV as the sole source of the meaning of "mental health disorder," it would be well advised do so in accordance with the APA rule-making procedures. The Board's finding in this case, however, supported as it is by substantial evidence, that the DSM-IV is authoritative and its decision that the DSM-IV's designations of "Adjustment Disorder with Disturbance of Conduct" and "Oppositional Defiant Disorder," are consistent with the language of section 13858 were appropriate, were supported by the record, and will remain undisturbed by this court in accordance with the applicable standard of review.

Attorney's Fees

Plaintiff has claimed that she is entitled to attorney's fees, citing *Bangs v. Town of Wells,* 2003 ME 129, 834 A.2d 955, because she raised, and this court has thus far foreclosed her from pursuing, a claim under 42 U.S.C. § 1983. In *Bangs,* the Law Court explained that, *in some cases, a party is entitled,* under 42 U.S.C. § 1988, to attorney's

fees incurred in the pursuit of non-constitutional claims if "a complainant is successful on a nonconstitutional ground, and no judgment is entered in the Section 1983 claim." *Bangs*, 2003 ME 129, ¶ 9, 834 A.2d at 958-59. In order to be entitled to an award of attorneys fees in this situation, however, three requirements must be met. *Id.* Those requirements are:

> First, the relief granted to the party must result in the material alteration of the legal relationship of parties. A "material alteration" exists when a party receives "at least some relief on the merits of his claim." Second, the successful pendant claim must arise from the same nucleus of operative facts [as those giving rise to the section 1983 claim]. Third, the federal claim must be substantial.

*Id.*

Assuming, *arguendo*, but without deciding, that petitioner has met the second and third requirements outlined in *Bangs*, the court nevertheless denies petitioner's request because she has not been successful on the merits of any of her claims.

The entry is

Petitioner's 80C petition is DENIED.

Dated at Portland, Maine this 12th day of January, 2005.

Robert E. Crowley
Justice, Superior Court

Date Filed 01-28-03     Cumberland     Docket No. AP-03-05

County

Action    80C APPEAL

A. MICHELLE COBB

STATE OF MAINE BOARD OF COUNSELING
PROFESSIONALS LICENSURE; CYNTHIA L. WOO[...]
WARD: POLLY MOUTEVELIS-BURGESS: CHERYLE
DAVIS: THEODORE E. CHAFFEE, KAREN O. ST.
CLAIR: DAVID C. BELLVILLE, SCOTT W. HUTC[...]
ERSON AND REID D. STEVENS

vs.

Plaintiff's Attorney Rufus Brown, Esq.
M. Thomasine Burke, Esq.
Brown & Burke
75 Pearl Street
P.O. Box 7530
Portland, ME 04112
(207) 775-0265

Defendant's Attorney

Judith Peters, AAG
Department of the Attorney General
6 State House Station
Augusta, ME 04333-0006

Robert C. Perkins, AAG
Department of the Attorney General
6 State House Station
Augusta, ME 04333-0006

Date of
Entry