STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-12-63
*NM-CUM-9/30/2013*

CYNTHIA J. WHITE,

Petitioner

v.

TOWN OF NAPLES,

DECISION AND ORDER

Respondent

and

PETER J. SERUNIAN and
KATHLEEN M. SERUNIAN,

30 AUG '13 PM 12:47

Parties-in-Interest


Before the court is Cynthia White's 80B appeal of the decision of the Town of Naples Board of Appeals (Board) concluding the second mooring of the parties-in-interest (the Serunians) was legal and affirming the Town of Naples Harbor Master's placement of that mooring. For the following reasons, the court remands this matter for further consideration consistent with this decision and order.

BACKGROUND

The Serunians and Ms. White own waterfront property on Long Lake. (R. 1, 14.) Both parcels have over 100 feet of lake frontage. (R. 1, 15.) On August 2, 2012, Peter Serunian applied for and received a second mooring permit for his waterfront property on Long Lake from the Town. (R. 1; Petition ¶¶ 5-6; Town Answer ¶¶ 5-6.)

In mid-August of 2012, Ms. White contacted the Naples Harbor Master, Bill Callahan, regarding a milk bottle attached to a brick in the water and inquired if it was

1

a new mooring. (R. 21.) Mr. Callahan inspected the site by boat and removed the bottle, because he had no "idea what it was there for." (R 21.) Later, Mr. Callahan was contacted by Jim Reidy, a professional mooring installer, who explained that the bottle was the site for a new mooring for the Serunians. (R. 21.) Mr. Callahan met with Mr. Reidy, who showed Mr. Callahan the plans for the location of the new mooring, which was within the boundaries of the Serunian property if boundaries carried out into State of Maine waters. (R. 21.) Mr. Callahan approved that location. (R. 21.) See Town of Naples, Shoreland Zoning Ordinance, § 15(C)(17)(a) (June 8, 2011) [hereinafter SZO] ("Mooring placement shall be the responsibility of the property owner, provided that the mooring(s) shall be placed in the location specified by the Harbor Master.")[1] (R. 109.)

A few days later, the Whites[2] contacted Mr. Callahan again and stated that the new mooring interfered with their access to their pontoon boat lift. (R. 21.) Mr. Callahan inspected the mooring site with the Serunians and Mr. White. (R. 21.) Mr. Callahan left after agreeing that the mooring was properly placed. (R. 21.) After that inspection, Mr. Callahan, at Ms. White's request, revisited the site. He has been there numerous times—in total, three times by car and six times by boat—and did not find on any occasion that the mooring interfered with navigation to or from the Whites' boat lift. (R. 21, 60.) Mr. Callahan concluded that the mooring is well within the boundaries of the Serunian property, but at times the drift from the chain may "seem to allow the boat to drift beyond the boundaries," although not rising to a navigational problem. (R. 21.)

---

[1] A full copy of the SZO is included in the supplemental 80B record at pages 86-140. Future citations are to the provision of the SZO and its page in the record.
[2] Presumably, this includes the petitioner's husband, although he is not a party to the present appeal.

On August 30, 2012, Ms. White appealed the mooring permit to the Board. (R. 9.) As grounds, Ms. White stated that the mooring significantly interferes with the use of her boat lift, swim raft, and mooring. (R. 9.) The appeal was heard on October 30, 2012. (R. 59.) At the hearing, Ms. White asserted that the placement of the new mooring did not allow her to access her boat lift safely and, based on a professional survey (R. 18), the Serunian mooring was in fact within the boundaries of her lake frontage. (R. 59.) The Serunians asserted that the mooring was within the boundaries of their lake frontage and placed there because the diver said it was the best spot for the mooring. (R. 59-60.)

Mr. Callahan was also present at the hearing and stated that the mooring was within the Serunian frontage, but the swing chain on the mooring allows the boat "most times [to] drift south to Mrs. White's property." (R. 60.) Nevertheless, the minutes reflect that Mr. Callahan stated that the Whites could safely navigate to the boat lift and the ordinance "does not state a mooring has to be in front of a property [owner's] land unless [it's] in a designated mooring area, such as an association." (R. 60.) The minutes reflect that the Serunians and the petitioner had taken photographs of the dock, mooring, and shoreline. Mr. Callahan had photographs that documented all of his visits. (R. 59-60.)

The Board unanimously voted to deny the appeal and determined that the mooring is a legal mooring and that the placement was approved by the Harbor Master in accordance with section 15(C) of the Shoreland Zoning Ordinance. (R. 60, 69.) Ms. White requested reconsideration of the decision. (R. 71-72.) The request for reconsideration was declined by a three to one vote because no new information was presented and, thus, there was no significant reason to reconsider. (R. 84-85.) Ms. White filed a timely appeal to this court on December 12, 2012. She requests a Rule 80B review

3

of the mooring permit in count I and seeks declaratory and injunctive relief in counts II and III. On February 15, 2013, the court ordered that count I would be considered first.

DISCUSSION

## I.    Standard of Review

When reviewing governmental action under M.R. Civ. P. 80B, the Superior Court reviews the operative decision of the municipality for "abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." Camp v. Town of Shapleigh, 2008 ME 53, ¶ 9, 943 A.2d 595 (quoting McGhie v. Town of Cutler, 2002 ME 62, ¶ 5, 793 A.2d 504). "Substantial evidence is evidence that a reasonable mind would accept as sufficient to support a conclusion." Toomey v. Town of Frye Island, 2008 ME 44, ¶ 12, 943 A.2d 563 (quoting Sproul v. Town of Boothbay Harbor, 2000 ME 30, ¶ 8, 746 A.2d 368). "The interpretation of a local ordinance is a question of law" that is reviewed de novo. Aydelott v. City of Portland, 2010 ME 25, ¶ 10, 990 A.2d 1024 (quotation marks omitted).

In this case, the SZO states that the Board of Appeals has only appellate capacity over decisions of the Harbor Master:

> 1.    Powers and Duties of the Board of Appeals:
>   a.    Administrative Appeals: To hear and decide administrative appeals, on an appellate basis, where it is alleged by an aggrieved party that there is an error in any order, requirement, decision, or determination made by, or failure to act by, the Planning Board or Harbor Master in the administration of this ordinance . . . .

SZO § 16(G)(1)(a); see also id. (providing for de novo review of decisions of the code enforcement officer). (R. 133-34.) The court agrees with the parties that the decision of Harbor Master Callahan is the operative decision for the court's review. See Gensheimer v. Town of Phippsburg, 2005 ME 22, ¶ 16, 868 A.2d 161. (Pet.'s Br. 8; Town's Br. 2-3.)

4

II.     Compliance with the SZO and Maine Law

Harbor Master Callahan approved the location of the Serunians' second mooring as compliant with section 15(C) of the SZO for moorings of shorefront property owners. (R. 21, 69.) Ms. White, however, argues that the approval of the second mooring is unlawful because it does not comply with 38 M.R.S. § 3 (2012), which permits only one mooring per parcel of shorefront property.

Section 3 governs the placement and assignment of moorings by harbor masters in coastal waters and great ponds, such as Long Lake.[3] See id. In relevant part, section three provides:

> Whenever practicable, the harbor master shall assign mooring privileges in those waters where individuals own the shore rights to a parcel of land, are masters or owners of a boat or vessel and are complainants, and shall locate suitable mooring privileges therefor for boats and vessels, temporarily or permanently, as the case may be, fronting their land, if so requested, but not to encroach upon the natural channel or channels established by municipal officers; *provided that not more than one mooring may be assigned to any shorefront parcel of land under this privilege.* . . . The limitation of one mooring assigned under this privilege does not prevent the owner of a shorefront parcel from receiving additional mooring assignments under the allocation system for all other residents.

Id. (emphasis added). To be eligible for a mooring based on this foregoing privilege, the owner's parcel of land must include "100 feet of shoreline frontage." 38 M.R.S. § 11(2) (2012). In contrast, the SZO states that "[t]he owner of said mooring(s) and property shall be limited to one (1) mooring per fifty feet of shore frontage." SZO § 15(c)(17)(b). (R. 109.) Accordingly, the SZO could permit two moorings per 100 feet of shore frontage, as happened here, in plain conflict with the one mooring limit of the statute. 38 M.R.S. § 3.

The Town asserts that a property owner can have multiple moorings, focusing on the last sentence quoted above, which allows owners to receive additional mooring

---

[3] See Smedberg v. Moxie Dam. Co., 90 A.2d 606, 607 (Me. 1952); (R. 22.).

5

assignments under an allocation system set up pursuant to the Town's ordinance. (Town's Br. 3.) The Town argues that is what happened in this case. (Town's Br. 3.)

The record plainly reveals that the second mooring was not assigned pursuant to an allocation system. See SZO § 15(C)(17)(e) (describing the process for establishing a designated mooring field). (R. 110.) Mr. Callahan's report states that the Serunians' second mooring is not in a "designated mooring area" (R. 22), and, at the public hearing, he distinguished the Serunians' mooring from a mooring in a designated mooring area, such as for associations (R. 60). The mooring registration and permit form filled out by Mr. Serunian similarly distinguishes between moorings for waterfront property owners and moorings as part of an association. (R. 1.) Mr. Serunian indicated his mooring permit application was based on his ownership of waterfront property. (R. 1.) The permit did not issue pursuant to an allocation system as contemplated by 38 M.R.S. § 3, and the approval appears to conflict with the state law limit of one mooring per parcel.

Although the administrative decision states that the mooring is legal (R. 69), the record does not show that the Board or the Mr. Callahan considered the propriety of issuing a second mooring permit to a single property owner. The administrative process focused on the *placement* of the second mooring, not on the *lawfulness* of the second mooring. Typically, an issue not raised through the administrative process is not preserved for appellate review by the Superior Court. See New Eng. Whitewater Ctr., Inc. v. Dep't of Inland Fisheries & Wildlife, 550 A.2d 56, 58 (Me. 1988). The preservation rule in the administrative appeal process is based on the doctrine of exhaustion of administrative remedies, thus "ensur[ing] that the agency and not the courts has the first opportunity to pass upon the claims of the litigants." Id. at 59-60.

6

Nevertheless, the SZO explicitly states that "[m]oorings must conform to all the specifications and permits required by this regulation and the State of Maine." SZO § 15(C)(17)(c). (R. 109.) The Law Court has concluded that language in an ordinance requiring a harbor master to perform the duties prescribed by Title 38 of the Maine Revised Statutes demonstrates an intent to incorporate the provisions of 38 M.R.S. § 3 into the town's ordinance. See Roberts v. Town of Phippsburg, 642 A.2d 155, 157 (Me. 1994). Although Roberts involved an issue regarding the relocation of a grandfathered mooring, the same intent to comply with state law regarding moorings is evident from the SZO of the Town of Naples.

Neither the Town nor the Serunians have argued that the lawfulness of the Town issuing a second mooring permit for one parcel has not been preserved for the court's review. Moreover, the Board explicitly concluded that the mooring was legal. (R. 69.) Finally, if the issuance of the mooring permit is not authorized by Maine statute, the resulting approval of its placement by the Harbor Master would be void. See Brackett v. Town of Rangeley, 2003 ME 109, ¶ 27, 831 A.2d 422 (Alexander, J., concurring) ("When a public officer or agency exceeds its statutory authority or proceeds in a manner not authorized by law, its resulting orders, decrees or judgments are null and void and may be attacked collaterally.") (cited in Nestle Waters N. Am., Inc. v. Town of Fryeburg, 2009 ME 30, ¶ 31, 967 A.2d 702). Under these circumstances, a remand to the Board is appropriate.

The court remands this matter to the Board of Appeals so the Board may consider, before the court addresses the claim, whether the mooring permit should have issued in the first instance. Because resolution of this issue could be determinative, the court does not address the balance of Ms. White's arguments at this time.

The entry is

> This Case is REMANDED to the Town of Naples Board of Appeals for further proceedings consistent with this Decision and Order. The court retains jurisdiction over this matter pending further decision by the Board.

Date: August 30, 2013

Nancy Mills
Justice, Superior Court

AP-12-063

8

Date Filed __12-12-12__ __CUMBERLAND__ Docket No. __AP-12-63__
County

Action ___80B APPEAL___

CYNTHIA J. WHITE

TOWN OF NAPLES
PETER J. SERUNIAN (PII)
KATHLEEN M. SERUNIAN (PII)

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| DAVID SILK ES<br>CURTIS THAXTER STEVENS BRODER & MICOLEAU<br>PO BOX 7320<br>PORTLAND ME 04112 | Geoffrey H Hole, Esq (Town)<br>N. Joel Moser, Esq (Town)<br><br>Gerald Schoefield, Esq. (Serunians)<br>511 Congress Street, Ste. 801,<br>Portland 04101<br>Mary Costagan Esq (Town of Naples)<br>PO BOX 9729, Portland 04104 |

Date of
Entry