STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-01-18

ST. JOSEPH HOSPITAL,

    Petitioner

    v.

DECISION AND ORDER

KEVIN CONCANNON, in his
capacity as the Commissioner
of the Maine Department
of Human Services,

    Respondent

## I.    Introduction.

This is a matter brought pursuant to M.R. Civ. P. 80C in which the petitioner, St. Joseph Hospital (SJH), asks this court to order the respondent, Kevin Concannon, Commissioner of the Department of Human Services ("commissioner," "the department," or "DHS"), to issue a decision on the petitioner's amended application for a Certificate of Need ("CON") without further delay and without the public hearing requested by Eastern Maine Medical Center ("EMMC"), "a directly affected person" under 22 M.R.S.A. § 307(2-B).   As such, the petitioner relies on this court's authority to provide relief to "[a]ny person aggrieved by the failure or refusal of an agency to act." 5 M.R.S.A. § 11001(2).   Such relief "shall include an order requiring the agency to make a decision within a time certain." *Id.*

## II.    History.

The factual and procedural history in this matter is not in serious dispute and can be restated here in a shorthand way as follows:

- July 13, 1998. SJH filed a CON application with DHS to implement cardiac catheterization and angiography services.

- November 13, 1998. DHS declared the application complete, commencing its formal review on December 1, 1998.

- April 9, 1999. DHS's CON unit issued a preliminary analysis recommending disapproval of SJH's CON application.

- May 13, 1999. SJH filed an amended CON application with DHS, having asked for a suspension of the review process of the first application for this purpose.

- July or August, 1999. DHS asked that SJH and other applicants for CON's for implementation of cardiac catheterization services to agree to a suspension of the review of their applications pending a study to evaluate the statewide need for such services. SJH assented to this request and eventually requested a suspension of its application. DHS agreed and suspended the application until December 31, 2000.

- September 15, 2000. The DHS study was completed.

- September 25, 2000. DHS advised SJH that it would now proceed to complete the CON process and, "All efforts will be made to provide Commissioner Concannon the opportunity to render a final decision prior to the end of this calendar year. If necessary the CON process will be extended in response to procedural requirements." Record ("R"), Exhibit 12.

- November 9, 2000. DHS issued its preliminary analysis of SJH's amended application and recommended its approval. EMMC, as a directly affected

2

"person" was notified of this action. DHS also advised that the review cycle for this application was to end on November 30, 2000, unless a hearing was requested in which case the review period would be extended by 60 days.

On this same date DHS notified SJH and EMMC by letter that because no public hearing was previously requested, these parties had 10 days from receipt of the letter to either request that a public hearing be held or submit comments on the preliminary analysis.

- November 22, 2000. Representatives of EMMC met with CON unit staff of DHS to discuss the SJH application. SJH was not notified of this meeting nor did any of its representatives attend.

- November 27, 2000. EMMC delivered a letter and materials to the director of the CON unit, William Perfetto, commenting on the SJH application.

On the same date, EMMC requested a public hearing on the SJH CON application.[1]

- November 29, 2000. EMMC sent the CON unit director a copy of the recently issued Governor's Blue Ribbon Commission on Health Care Report. At about this time, SJH reviewed its file at DHS and was advised by Perfetto that he had returned EMMC's written material unopened because he had been advised that a public hearing was to be preferred to a review of comments.

[1] All parties agree that EMMC's request for a public hearing on November 27, 2000, extended the review cycle of SJH's CON application to January 29, 2001. Otherwise, the review cycle would have ended on November 30, 2000.

- December 11, 2000. William Perfetto, CON unit director, acknowledged EMMC's request for a hearing and scheduled an informational meeting for December 21, 2000. In the letter setting the meeting, Perfetto repeated that EMMC's written submissions had not been reviewed "per CON statutes." R., Exhibits 19, 20.

- December 21, 2000. The cited informational meeting was conducted.

- January 23, 2001. SJH wrote to Perfetto requesting "that a specific and timely date be designated for public hearing." R., Exhibit 24. The same letter objected to further delay of the review process and requested "a final decision on its application or specific dates for the public hearing . . ." *Id.*

- January 29, 2001. Perfetto notified SJH and EMMC that a public hearing on SJH's CON application had been scheduled for February 12, 2001, in Bangor.

- February 12, 2001. The public hearing was postponed because there was a lack of a quorum. SJH and EMMC were present and prepared to proceed.

- February 14, 2001. SJH wrote the commissioner and demanded "that a decision be issued forthwith on its application," and that a hearing not be rescheduled. R., Exhibit 31.

- March 19, 2001. SJH filed the petition which is now pending before the court.

- April 3, 2001. At the request of SJH, this court stayed a public hearing scheduled for April 9, 2001, on the CON application of SJH. Neither DHS nor EMMC objected.

4

## III. Discussion.

### A. EMMC's Waiver of Right to Hearing.

Petitioner's second argument[2] in support of its request for an order directing the commissioner to issue an immediate decision without a hearing on the application for a CON is that EMMC waived any right to a public hearing by submitting written comments to the department.

All parties appear to agree that if a directly affected party so requests, "a public hearing shall be held during the course of a review by the [CON] Advisory Committee . . ." 22 M.R.S.A. § 307(2-B), but, if no hearing is to be held, an affected or interested person may submit comments within a prescribed time period. 22 M.R.S.A. § 307(2-B)(F). They also agree that this provides a choice to such a party so that if it requests a hearing, it cannot submit comments and vice versa. This statutory construction is not only reasonable, because it is the interpretation applied by the department, it is also entitled to great deference as DHS is the agency which administers the provisions of this statute. *Wood v. Superintendent of Insurance*, 638 A.2d 67, 70 (Me. 1994); 22 M.R.S.A. § 307.

The petitioner argues, however, that because EMMC submitted comments along with its request for a hearing, and those comments appear in the official agency record, it cannot be said that such information was not reviewed. While this may be characterized as a factual dispute which the petitioner could have raised at an evidentiary hearing if timely requested, M.R. Civ. P. 80C(e), the petitioner's claim instead is that once submitted, the comments had to be reviewed by the commissioner

---

[2] The court will not be following the construct of the arguments in this case as submitted by the parties, but will endeavor to address each of them.

5

in making his decision. That being so, the petitioner contends, EMMC was not entitled to a hearing as the commissioner had its comments and therefore its choice as to the manner in which it wished to provide information to that official on SJH's application.

In support of this argument, the petitioner cites the court to 22 M.R.S.A. § 307(5-A)(C)(1) which it reads as requiring the commissioner to make his decision based on the informational record which includes, "All . . . filings, correspondence and documentary material submitted by . . . interested or affected persons . . ." *Id.* Thus, the petitioner says, because EMMC submitted material to the commissioner, that official must act on the application based on that submission and not conduct a hearing. The cited statute, however, goes on to define "informational record developed in the course of review" as including, "stenographic or electronic recording of any public hearing or meeting held during the course of review . . ." 22 M.R.S.A. § 307(5-A)(C)(3). It is also to include, "the recommendations of the committee." 22 M.R.S.A. § 307(5-A)(C)(5).[3] Taking the text of section 307(5-A) in its entirety, it appears plain that the informational record on which the commissioner is to make his decision is not limited to interested parties' submissions, but may also include other sources of information, including the public hearing record and the recommendation of the CON advisory committee which would be based on that hearing. Nothing in this section favors one source of information over another, nor does the section direct the commissioner to limit his review to written submissions as the petitioner suggests. Indeed, this section is consistent with the agreed upon interpretation of the statutory provisions which govern the CON application decision-making process, namely that an interested party cannot both submit written

---

[3]The "committee" is the Certificate of Need Advisory Committee whose function is to conduct public hearings on CON applications with the department. 22 M.R.S.A. § 307(2-A).

comments and have a hearing; it must choose between these two means of communication. 22 M.R.S.A. § 307(2-B), (2-B)(F). After the choice has been made, that information can be made part of the record on which the commissioner bases his decision. 22 M.R.S.A. § 307(5-A). All this being so, this court cannot conclude that the contemporaneous submission of comments with a request for a public hearing means that a decision must be made on the former submission and that the latter means of communication is waived.

The petitioner also questions the department's preference for a public hearing which it characterizes as an acquiescence to EMMC's request for this forum. However, a legislative purpose of the Maine Certificate of Need Act of 1978, 22 M.R.S.A. §§ 302-324, is to "[e]nsure public participation in the process of determining the array, distribution, quantity, quality and costs of these services." 22 M.R.S.A. § 302(2)(F). Thus, again, not only was it reasonable for the department to prefer a hearing to contemporaneously submitted comments in order to satisfy legislative purposes, such an interpretation of this statute is entitled to great deference. *Wood v. Superintendent of Insurance*, 638 A.2d at 70.

While the petitioner has not briefed the point, it does indicate in a footnote that EMMC also submitted material which the former characterizes as "comments" at a private meeting between EMMC officials and Perfetto on November 22, 2000. Petitioner's Brief, p. 3, n.5. R., Exhibit 16. The statute, however, specifically authorizes the department to hold "informational meetings" with "interested and affected persons prior to the conduct of the hearing." 22 M.R.S.A. § 307(2-B). Nothing in this section requires that the applicant be present for such meetings, nor does it prohibit the department from receiving written submissions during the course of such meetings.

7

That said, however, it appears from the record that EMMC gave the department its "comments" with respect to the November 22 meeting at a later date, November 27, and not at the meeting itself. R., Exhibit 16. It also appears that it was these comments that were rejected by Perfetto on December 11, 2000, when he wrote to the parties acknowledging the November 27 contemporaneous request for a public hearing and the receipt of the comments "forwarded with your request." R., Exhibit 19. From this, it has to be concluded that DHS did not engage in any unauthorized communications with EMMC on November 22, 2000, and did not receive any "comments" then. Instead, any material generated by this meeting was sent to DHS later and then rejected consistent with its interpretation of the CON statute -- a reading of this law which this court has found to be reasonable.

Most importantly, if the petitioner's argument were to prevail here and the court were to order the commissioner to act on the pending CON application immediately, he would be doing so without a public hearing and without consideration of EMMC's "comments" which have been rejected. Such a result would directly contradict the mandate of the Legislature which requires that the commissioner's decision be based on the informational record, which, as noted, includes the results of a public hearing and/or comments submitted. 22 M.R.S.A. § 307(5-A). The court and the department lack the authority to defy such an unambiguous legislative mandate. Moreover, on a practical level, such a procedure would inevitably entail further delay as the commissioner's decision based on neither a public hearing nor on comments, or on the latter information only, would invite appellate review of the commissioner's decision which could result in a remand directing the adoption of one procedure or another and the passage of more time. In sum, this court concludes that the department did have

8

the authority to conduct a public hearing on SJH's CON application and, in lieu thereof, reject EMMC's written comments. From all this, the court cannot conclude that EMMC waived any right it may have to a public hearing, nor that DHS erred in accommodating this request.

## B. SJH's Waiver of Objection to a Public Hearing.

EMMC and the respondent, DHS, both argue that SJH waived any right it may have had to object to the department's choice to conduct a public hearing in lieu of receiving comments from EMMC. This contention is supported by the record.

Both at the administrative level and here, SJH has taken the position that DHS could appropriately either receive comments from EMMC or conduct a public hearing at the latter's request. R., Exhibit 31. Once the department elected to schedule a public hearing, the petitioner neither objected nor insisted that the commissioner instead made his decision based on EMMC's "comments." Indeed, after the decision was made to schedule a hearing, the petitioner made the reasonable request that it be conducted in a timely way. R., Exhibit 24. Moreover, even after the February 12, 2000 hearing was aborted, the petitioner still did not object to the public hearing process, even though this meeting date was outside the time period in which it should have been held. 22 M.R.S.A. § 307(2-B).[4]

The petitioner, after February 12, did object to the late date of the hearing at the administrative level and then, later, to the process itself in this court. It says that it could

---

[4] The parties agree that if the hearing was to have been conducted within the 60 days prescribed by the cited statute, it should have been held on or before January 29, 2001.

Petitioner's assertion that it was prepared to object to the late hearing date on February 12 does not appear in the record; as such, this "fact" may not be considered by this court. M.R. Civ. P. 80C(d). Moreover, its compelling letter of February 14 to the commissioner makes no mention of an objection to the department's choice to conduct a hearing. R., Exhibit 31.

not have objected to the department's election to conduct a hearing because it was required to wait until the commissioner rendered a decision on the application and only then could, and would, object to the process at a reconsideration hearing as 22 M.R.S.A. § 310 provides. Because the commissioner has not issued his decision on the application, the petitioner says, it has not had the opportunity to object to the department's failure to follow procedures and therefore has not waived objection to the hearing process.

Nothing in the CON statute or the reconsideration section, *id.*, however, prevents a participant in the CON application and review process from objecting whenever it chooses at any step in this process. Indeed, it would be a profligate waste of the resources of all concerned if a party could not object and, perhaps, correct a misstep it had observed in the process because it felt constrained to do so until the entire intricate process was over and a decision had been made. Thus, such a reading of section 310 would mean that the CON process, which specifically encourages the participation of all concerned, 22 M.R.S.A. § 302(2)(F), is not to consider objections and correct errors until it is over and, only until then, is to convene a new hearing to consider objections and correct mistakes. Obviously, the Legislature could not have intended such an absurd, inconsistent result. *Reagan v. Racal Mortgage, Inc.*, 1998 ME 188, ¶ 7, 715 A.2d 925, 927.

Instead, logic dictates that a party aggrieved by the process act when the insult occurs so that it may be remedied then, and not at some later date when the injury may have been compounded. The case cited by the parties, *Hale v. Petit*, 438 A.2d 226, 230 (Me. 1981) is not to the contrary. That case holds that a party aggrieved by a commissioner's decision on a CON application must seek reconsideration first before

10

seeking judicial review. It does not hold that a party must wait until reconsideration to express and, perhaps, remedy its grievances with the CON process.

Moreover, it can be observed that the petitioner's arguments in this debate are inconsistent. On the one hand, it asks this court to exercise its authority, suspend the CON process, including agency reconsideration, and order the department to render a decision immediately because, in part, it has erroneously elected to conduct a public hearing. On the other, it cites the court to significant precedent, *Hale v. Petit, id.,* to the effect that DHS's failure to follow procedures, namely its choice to conduct a public hearing, must first be remedied at the agency level before this court can act, and that because the petitioner never had such a reconsideration hearing, it was barred from objecting to the offending process at the agency level. The petitioner's complaint that DHS elected to conduct a public hearing on its CON application is fundamental to its argument here for relief. It acknowledges, however, that it could have pursued that complaint at the agency level although it also says it would have had to have waited for the hearing to have occurred and a decision made on the application before doing so. Its failure to follow that process, in this court's view, constitutes a waiver of that claim which it never raised with the agency and which could have been there remedied. It also defies the import of *Hale,* which directs those grieved by the CON application process to seek reconsideration before judicial review.

Were it given the opportunity, the petitioner might argue that, *Hale* notwithstanding, it has the authority to come here to have agency action ordered upon its "failure or refusal to act." 5 M.R.S.A. § 11001(2). The record shows, however, that the agency was prepared to act and had scheduled a new hearing on the petitioner's CON application on April 9, 2001. While such a hearing may have been

11

outside the time period prescribed for such action, it certainly was not a "failure or refusal to act"; instead, it was a tardy action which, once taken and a decision made, could have allowed the petitioner to correct any procedural errors made at a reconsideration hearing if its application was denied. If its application was approved, it, of course, would have no need invoke judicial action, and the legal preference for exhaustion of administrative remedies would have been honored. *Berry v. Board of Trustees*, 663 A.2d 14, 18 (Me. 1995) (citing *New England Whitewater Ctr., Inc., v. Dep't of Inland Fisheries and Wildlife*, 550 A.2d 56, 58 (Me. 1988).

## C. Tardiness of Agency Action.

The petitioner's first and fundamental argument, closely related to its objection here to the respondent's election to conduct a public hearing, is that the commissioner has not acted within the time frame mandated by statute to issue his decision on the petitioner's CON application. 22 M.R.S.A. § 307(3).

As noted, the parties do not dispute that the CON statute requires that the CON Advisory Committee to have held its public hearing and the commissioner to have acted on the application by January 29, 2001. Because neither of these events occurred by that date, the petitioner agues that the court ought to order the respondent to act on the application without further delay. In this regard, the petitioner finds support in our case law which holds that a party who has not received the benefit of an agency decision within the time frame prescribed by statute may turn to this court to remedy such inaction. *Eastern Maine Medical Center v. Maine Health Care Finance Comm'n*, 601 A.2d 99, 101 (Me. 1992).

That this court has jurisdiction over such a claim, however, does not, by itself, entitle the petitioner to the remedy it seeks. The time period fixed for decision-making

12

on a CON application is directory rather than mandatory. *Magnetic Resonance v. Dep't of Human Services*, 652 A.2d 655, 658 (Me. 1995). This is so because the time limit ordained here is without "any negative words restraining the doing of it afterward." *Bradbury Memorial Nursing Home v. Tall Pines Manor*, 485 A.2d 634, 640 (Me. 1984) (quoting 73 Am.Jur.2d *Statutes*, § 18 at 279 (1974)).[5] Thus, as here, that the respondent, without objection from the petitioner, exceeded the statutory time period when scheduling a hearing suggests not only that the petitioner was not prejudiced thereby, but also that it waived any objection at least as to the February 12 hearing.

It has also claimed no prejudice in its petition or brief by virtue of the proposed scheduling of another public hearing on its application for a CON.[6] This absence of harm to the petitioner, weighed against the other interests contemplated by the law applicable in this case, militate against providing the petitioner with the remedy it seeks, namely an order to the commissioner to act on its CON application immediately.

Originally, a purpose of the Maine Certificate of Need Act was to "[p]rovide an orderly method of resolving questions concerning the need for health care facilities and health services which are proposed to be developed." 22 M.R.S.A. § 302(2)(E) (1991). That emphasis on procedure, however, was repealed in 1998. P.L. 1997, c. 689, § B-1. That same legislative act added text to section 302 to clarify the importance of public involvement in the CON application process so that the "Purposes" subsection of this

---

[5] The conclusion that the Legislature intended no consequence to the failure to render a timely decision on a CON application is supported by the legislative history that that body considered but rejected amending the CON statute so that an application would be "deemed to be approved" in the event no decision was made within the time fixed by the law. L.D. 572, 113th Legislature, 1985. *See Central Maine Medical Center v. Kevin Concannon, et al.*, AP-00-16 (Me. Super Ct., And. Cty)

[6] The petitioner does assert in its Motion for Stay that scheduling a second hearing is prejudicial because of the passage of time and the cost to attend and prepare for such an event.

13

section now reads, "[to] [e]nsure public participation in the process of determining the array, distribution, quantity, quality and cost of these services." 22 M.R.S.A. § 302(2)(F) (Supp. 2000).

From this, it is plain that the Legislature in 1998 chose to emphasize public participation in the CON application decision-making process while striking any reference to decision-making efficiency as a statutory purpose. In this regard, then, to order the commissioner to forego a process in which public participation may occur for the sole purpose of acting within a specified time frame runs counter to the current legislatively expressed purposes of the CON statute.

The result the petitioner seeks also is contrary to due process which requires that the public be permitted to comment on an application in the circumstance of a requested public hearing. *Hale v. Petit*, 438 A.2d at 232.

Thus, while there is tension here between two legislative mandates within the same statute, namely one requiring a public hearing if requested by a "directly affected" person, 22 M.R.S.A. § 307(2-B), the other requiring that the hearing be held and a decision be made within a prescribed time period, *id.*, 22 M.R.S.A. § 307(2-B), (3), this court determines here that the latter mandate must yield to the former. As noted, this is so because expressed legislative purposes and due process require this result. Also as noted, the petitioner cites no prejudice by allowing the department to fulfill its cited statutory responsibilities, though it will do so tardily.

It is of consequence that the respondent has chosen to pursue the responsibility, as it sees it, to conduct a public hearing before the commissioner renders a decision. As noted herein, an agency's interpretation of a statute it administers is entitled to great deference. *Wood v. Superintendent of Insurance*, 638 A.2d at 70. As well, to directly

14

interfere in the respondent's conduct of this application process, although statutorily authorized, 5 M.R.S.A. § 11001(3), risks breaching our rigorous principle of separation of powers. *NEOC v. Commissioner of Inland Fisheries*, 2000 ME 66, ¶ 9, 748 A.2d 1009, 1013. That is not to say that the respondent is immune from judicial action in the CON process. Our Law Court has held that the Superior Court can order the commissioner to act on an application, *Eastern Maine Medical Center v. Maine Health Care Finance Commission*, 601 A.2d at 101, it can also review his final decision after the reconsideration process, *Bradbury Nursing Home v. Tall Pines Manor*, 485 A.2d at 640. But under the circumstances of this case where no prejudice has been claimed, no bureaucratic foot dragging established,[7] and no clear statutory preference for expeditious action over public participation and due process established, this court must decline to grant the petitioner the remedy it seeks. It is, however, obvious that the respondent must act deliberately and efficiently in acting on the pending CON application and can infer nothing from this decision and order that would permit him to further delay action in conducting a hearing and rendering a decision on the petitioner's CON application.

## IV. Miscellaneous.

EMMC has filed a Motion to Submit Additional Evidence which was modified at oral argument to simply seek the inclusion in the record of the affidavit of Norman A. Ledwin, an executive of EMMC. The petitioner does not object to the motion as so limited; the respondent, however, does object because it does not fit within the

---

[7] The petitioner does complain about the bureaucracy's having missed its statutory deadline, but had the petitioner not filed this case here and asked for a stay, DHS would have conducted its public hearing by now, and the commissioner's decision and, if necessary, a reconsideration hearing may have also occurred by this time.

15

statutory provisions which allow a record to be corrected or modified. 5 M.R.S.A. § 11006(1).

More to the point, our rules mandate that a party who wishes a court to take additional evidence must do so within 10 days after the record of agency proceedings is filed with the court. M.R. Civ. P. 80C(e). The failure to do so, "shall constitute a waiver of any right to the taking of additional evidence." *Id.* The record in this matter was filed on March 29, 2001, and the motion was filed on May 1, 2001 -- more than 10 days later. As such, EMMC has waived any right to the taking of additional evidence and the motion must be denied.

At oral argument, EMMC also asked to supplement the record with a document it has labeled, "Supplemental Record Exhibit A" which appears to be the respondent's preliminary review of the petitioner's CON application. Because no party objects to this request, it is to be granted. No other material submitted by EMMC at the hearing on these matters is to be considered part of the record.

## V.    Conclusion.

The clerk will make the following entries:

> Motion to Submit Additional Evidence is DENIED.
> Request to supplement the record with Supplemental Record Exhibit A is GRANTED.
> Petition is DENIED. Case REMANDED for further proceedings consistent with this Decision and Order.

So ordered.

Dated: November ___2___, 2001

John R. Atwood
Justice, Superior Court

16

Date Filed __3/19/01__ _____Kennebec_____ Docket No. __AP01-18__ _____

County

Action ____Petition for Review_____ _____

# J. ATWOOD

St.Joseph's Hospital                    vs.    Kevin Concannon

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Joseph Kozak Esq<br>160 Capitol St<br>Augusta Maine  04330 | ~~Bernard Kubetz, Esq. EMMC~~<br>~~State House Sta. 6~~   44 Oak St. 4th Flr.<br>~~Augusta Maine  04333~~ Portland Me 04101<br><br>-Bernard Kubetz, Esq. (EMMC)<br> PO Box 1210<br> Bangor Maine  04402 |

| Date of Entry | |
|---|---|
| | - Jane Gregory, AAG<br> State House Sta. 6<br> Augusta Maine  04333 |
| 3/19/01 | Petition for Review of Failure or Refusal of Agency to Act, filed.<br>s/Kozak, Esq. & Ciembronowicz, Esq.<br>Proposed Order, filed.<br>Affidavit of Sister Mary Norberta C.S.S.F., filed.<br>Affidavit of John D. Dickens, filed.<br>Motion to Expedite Review, with incorporated memorandum of law, filed.<br>Proposed Order on Motion for Expedited Review, filed. |
| 3/20/01 | ORDER, Atwood, J.<br>The Petitioner's motion for expedited review is DENIED without prejudice.<br>Copies in hand to atty Kozak.  Copies mailed to AG. |
| 3/22/01 | Acknowledgment of Receipt and Acceptance of Service, filed. s/Kubetz, Esq. |
| 3/26/01 | Entry of Appearance, filed. s/Guignard, AAG. |
| 3/27/01 | Letter from attorney Kubetz indicating his position on the petition, filed |
| 3/29/01 | Certification of Record with exhibits 1-37, filed. |
| 3/29/01 | Notice of briefing schedule mailed to attys of record. |
| 4/2/01 | Motion for Stay of Hearing, with Incorporated Memorandum of Law, filed.<br>s/Kozak, Esq.  (attachments A,B,C)<br>Request for Hearing on Motion for Stay of Hearing, filed. s/Kozak, Esq.<br>Proposed Order on Motion for Stay of Hearing, filed. |
| | Faxed copies of pleadings to Justice Atwood at Knox County Superior<br>Court. Atty. Kozak would like a telephone conference. |
| | Letter informing the court there is no objection to Petitioner's Motion<br>to Stay.<br>Faxed copy to Justice Atwood at Knox County Superior Court. |
| 4/6/01 | ORDER ON MOTION FOR STAY OF HEARING, Atwood, J.  (signed 4/3/01)<br>Petitioner s Motion for Stay of Hearing is GRANTED and it is hereby<br>Ordered:<br>  1  That the March 26, 2001  notice setting a hearing before the<br>     Certificate of Need Advisory Committee on April 9, 2001  be |