2006 ME 111

**John E. ARSENAULT**

v.

**SECRETARY OF STATE.**

Supreme Judicial Court of Maine.

Argued: Aug. 31, 2006.
Decided: Sept. 7, 2006.

Daniel I. Billings, Esq. (orally), Marden, Dubord, Bernier & Stevens, Waterville, for plaintiff.

G. Steven Rowe, Attorney General, William H. Laubenstein III, Asst. Atty. Gen. (orally), Augusta, for defendant.

Panel: CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CALKINS, J.

[¶ 1] This case is before the Law Court on report, pursuant to M.R.App. P. 24(a), from the Superior Court (Kennebec County, *Studstrup, J.*). John E. Arsenault filed a petition to review a decision of the Secretary of State declaring that Arsenault was not qualified to be the Republican candidate for the State Senate from Senate District 10 because he was not a member of the Republican Party on the date he was nominated as a replacement candidate. We conclude that the Secretary has erroneously interpreted the election statutes concerning replacement candidates. Therefore, we remand this matter to the Superior Court for the entry of a judgment vacating the Secretary's decision.

## I.  BACKGROUND

[¶ 2] The facts are not disputed. In this year's June primary election, Patricia Stasinowsky was nominated as the Republican candidate for Senate District 10, which includes Brunswick, Freeport, Harpswell, and Pownal. On July 9, Stasinowsky withdrew as a candidate. The Secretary declared the vacancy and notified the members of the Cumberland County Republican Committee residing in District 10 that the deadline for filling the vacancy was July 24.

[¶ 3] On July 21, Arsenault, a resident of Freeport, filed an application to change his enrollment from Democrat to Republican. On July 23, the committee met and nominated Arsenault as the Republican candidate to replace Stasinowsky. On July 24, the certificate of nomination signed by the committee chairman and secretary and the acceptance of nomination signed by Arsenault were filed with the Secretary. Both forms noted that Arsenault had completed the steps necessary to change his enrollment from Democrat to Republican on July 21.

[¶ 4] The Secretary informed Arsenault by letter that he was not qualified to become a replacement candidate because he was not a member of the Republican Party on July 23, and "[i]t has been this office's consistent interpretation that in order to be selected as a replacement nominee, a voter must be a member of the political party choosing the replacement candidate, at the time of selection."

[¶ 5] Arsenault filed a petition in the Superior Court pursuant to M.R. Civ. P. 80C to challenge the Secretary's decision. He also filed a motion to report the case pursuant to M.R.App. P. 24(b), and the court granted the motion pursuant to M.R.App. P. 24(a).

## II.  DISCUSSION

[¶ 6] Arsenault contends that the Maine statutes do not require a replacement candidate to be an enrolled member of the nominating party on the date that the nomination is made. The Secretary of State argues that in order to be a replacement candidate, Arsenault was required to be an enrolled Republican at the time of his nomination by the Republican Party. The Secretary acknowledges that there is no statute expressly requiring a political party to nominate a replacement candidate who is an enrolled member of that party at the time of the nomination. The Secretary, however, states that his office has consistently interpreted the statutory scheme to contain this requirement.

A.  The Relevant Statutory and Constitutional Provisions

[¶ 7] When a candidate nominated in the primary election process withdraws, the Secretary of State declares the vacancy and notifies the political party. 21–A M.R.S. §§ 362–A, 371 (2005). The vacancy is to be filled by the appropriate political

committee. 21–A M.R.S. § 371. The duties of the committee are set forth in section 363(2):

> The committee shall choose a qualified person to fill the vacancy. The secretary of the committee shall immediately deliver a certificate to the Secretary of State containing the name of the person chosen, his residence, his political party, title of the office sought, and the method by which he was chosen. The certificate must be signed by the chairman of the committee and attested to by the secretary.

The chosen candidate is required to file a written acceptance of the nomination stating "that the person meets the qualifications of the office sought and declaring the person's residence and party enrollment with the Secretary of State." 21–A M.R.S. § 363(3).

[¶ 8] Although the quoted language above from sections 363(2) and (3) refer to "qualified person" and "qualifications," there are no express statutory qualifications for replacement candidates. However, the Maine Constitution establishes qualifications for members of the State Senate and House of Representatives. Members of the State Senate are required to be twenty-five years of age at the beginning of their term and to meet the other constitutional requirements of State Representatives. ME. CONST. art. IV, pt. 2, § 6. Representatives are required to have been a citizen of the United States for five years; a resident of Maine for one year; and a resident of the district for three months before the election and during the time in office. ME. CONST. art. IV, pt. 1, § 4. Whether an elected person is, in fact, qualified is determined by the Senate for senators and the House for its members. ME. CONST. art. IV, pt. 3, § 3.

[¶ 9] The statutes governing primary elections have qualification requirements for candidates:

> A candidate for nomination by primary election must file a primary petition and consent under sections 335 and 336. The candidate must be enrolled, on or before March 15th, in the party named in the petition and must be eligible to file a petition as a candidate for nomination by primary election under section 144, subsection 3.

21–A M.R.S. § 334 (2005). However, the qualification requirements for primary elections expressly do not apply to nominations to fill vacancies. 21–A M.R.S. § 331(2)(B) (2005) ("This Article does not apply to . . . [n]ominations to fill vacancies . . . .").

[¶ 10] Changes to party enrollment are governed by 21–A M.R.S. § 144 (2005). To change party enrollment a voter is required to file an application. 21–A M.R.S. § 144. Once the application is filed, the voter is restricted from voting at a caucus, convention, or primary election for fifteen days after filing the application. 21–A M.R.S. § 144(3). Upon receiving the application to change party enrollment, the registrar is required to remove the designation of the voter's party from the central voter registration system:

> The registrar shall indicate in the central voter registration system that the applicant is ineligible to vote at a caucus or primary election for 15 days by designating the party enrollment field with the letter "X." Fifteen days after receiving the application, the registrar shall enroll the applicant in the party requested and enter the new party designation in the party enrollment field.

21–A M.R.S. § 144(2).

B. Statutory Interpretation

[¶ 11] This case raises an issue of statutory interpretation by an administra-

tive agency. Our primary purpose in statutory interpretation is to give effect to the intent of the Legislature. *Cobb v. Bd. of Counseling Prof'ls Licensure,* 2006 ME 48, ¶ 11, 896 A.2d 271, 275. We do so first by reviewing the plain language of the statute, and if the language is unambiguous, we interpret the statute according to its plain language. *Id.* ¶ 13, 896 A.2d at 275. When a statute is ambiguous we defer to the interpretation of the agency charged with its administration, if the agency's interpretation is reasonable. *Melanson v. Sec'y of State,* 2004 ME 127, ¶ 8, 861 A.2d 641, 644.

## C. Section 144

■ [¶ 12] The Secretary first contends that section 144 evidences the Legislature's intent that replacement candidates are required to be members of the nominating political party at the time of nomination. The Secretary reasons that because section 144 prohibits a person from the significant activity of voting at a caucus, convention, or primary election for fifteen days, the Legislature intended to restrict the voter from other significant activities, such as being a replacement candidate, during the fifteen-day period.

[¶ 13] Section 144 makes no reference to the qualifications of candidates for office. Section 144 is referred to in section 334, which requires a candidate for primary election to be enrolled, as of March 15, in the party for which the candidate is seeking to become a nominee. However, there is no mention of section 144 in section 363, the statute governing replacement candidates.

[¶ 14] The obvious purpose of the fifteen-day voting restriction in section 144 is to keep members of one political party from making a last minute change in party enrollment and voting in another party's primary or caucus. The purpose of the requirement in section 334 that primary election candidates be a member of the political party several months before the election is to make it more difficult for members of one political party to hinder or influence the other party's nomination process. None of these concerns appear applicable to a replacement candidate because section 363, which governs the replacement process, leaves it to the party's committee to select the party's nominee.

[¶ 15] Section 144 neither plainly states that replacement candidates must be enrolled members of the party nominating them, nor is such a meaning reasonably derived from it. We do not find section 144, standing alone, to create an ambiguity concerning replacement candidates.

## D. Section 363

■ [¶ 16] The Secretary also relies on section 363(2) and (3), which requires the party committee to certify the candidate's political party and requires the candidate to declare his party enrollment, as exhibiting a legislative intent that replacement candidates be enrolled in the nominating party at the time of nomination. The Secretary argues that the certification and declaration requirements mean that a person has to be enrolled in the party nominating the person at the time of the nomination. According to the Secretary, upon filing the application to change enrollment, Arsenault became a voter who was not enrolled in any party for the fifteen-day period in section 144, and because he was unenrolled, he could not satisfy the requirement in section 363(3) that he declare his party enrollment.

[¶ 17] However, section 363 does not state that the candidate must be a member of the nominating party. The requirement that a person filling out a form declare that person's party affiliation does not translate into a requirement that the per-

son be a member of any party. If the Legislature had intended to make enrollment in the nominating party a qualification of a replacement candidate, it knew how to say so directly as it did in section 334 for candidates in primary elections: "The candidate must be enrolled . . . in the party named in the petition . . . ." [1]

[¶ 18] The Secretary argues that the statutory requirement of certifying the "political party," section 363(2), and declaring "party enrollment," section 363(3), would be mere surplusage if they did not mean that the person had to be a member of the nominating party at the time of the certification and declaration. However, an obvious purpose of the requirements is disclosure and transparency so that any interested citizen inquiring about a candidate can get basic information from the Secretary of State's office.[2]

[¶ 19] We conclude that section 363 standing on its own does not require a replacement candidate to be enrolled in the nominating party at the time of nomination.

E. Deference to the Secretary's Interpretation

[¶ 20] The Secretary informed Arsenault that "[i]t has been this office's consistent interpretation that in order to be selected as a replacement nominee, a voter must be a member of the political party choosing the replacement candidate, at the time of selection." The Secretary argues that his consistent interpretation of the statutory scheme is entitled to deference.[3]

[¶ 21] We defer to the Secretary's interpretation if the statutes or statutory scheme are ambiguous and if his interpretation is reasonable. *Melanson*, 2004 ME 127, ¶ 8, 861 A.2d at 644. However, we are not persuaded that sections 144 or 363 are ambiguous either standing alone or in the context of the statutory scheme governing the nomination of replacement candidates.

[¶ 22] The Secretary argues that his interpretation regarding the qualifications of replacement candidates makes the replacement candidate process consistent with the primary election process. However, the Legislature was obviously aware of the inconsistency between the requirements for primary election candidates and replacement candidates, and wrote language to deal with it by stating that the statutes regarding primary election candidates are not applicable to replacement candidates. *See* 21-A M.R.S. § 331(2)(B). The Legislature made clear that its intention was not to import the requirements for primary election candidates to the replacement candidates.

[¶ 23] There is no ambiguity in the statutory scheme regarding the nomination of a replacement candidate that requires a clarifying interpretation from the Secretary. In fact, the Secretary is doing more than interpreting the statutory scheme; his of-

---

1. There are other examples of the Legislature explicitly requiring that a vacancy after a primary election be filled by a person "enrolled in the same political party." 30-A M.R.S. § 63 (2005); 30-A M.R.S. § 151(3)(A) (2005); 30-A M.R.S. § 371-B(2) (2005).

2. The certification form also contains additional information not set forth in the statute, such as telephone number and mailing address, if different from residence.

3. For purposes of this case, we accept the Secretary's representation of his office's consistent interpretation. However, as Arsenault points out, the Secretary has not promulgated a regulation embodying the interpretation, and the Secretary has not cited to any publication of his office containing the interpretation.

fice has fashioned a limitation that does not exist in the statutes. There is no indication that the Legislature intended that the Secretary create additional qualifications or limitations for the selection of replacement candidates. Given the fundamental importance of the right to vote and the right to participate in the political process, and given the painstaking detail of the election statutes, if the Legislature had intended to delegate to the Secretary the authority to add restrictions to this process, it would have done so explicitly.

[¶ 24] In summary, the statutory scheme regarding replacement candidates is not ambiguous, and we do not defer to the Secretary's interpretation. We conclude that the Maine statutes allow the Republican Committee to nominate Arsenault even though he was not an enrolled member of the Republican Party at the time of the nomination.

The entry is:

Case remanded to the Superior Court for the entry of judgment vacating the decision of the Secretary of State.