STATE OF MAINE                                    SUPERIOR COURT
                                                  CIVIL ACTION
KENNEBEC, ss.                                     DOCKET NO. AP-09-06
                                                  JA'͜ - KE.U - //

JUDITH WHITLEY,

            Petitioner

            v.                                    **DECISION**

BOARD OF TRUSTEES, MAINE
PUBLIC EMPLOYEES
RETIREMENT SYSTEM,

            Respondent


Before the court is petitioner's M.R. Civ. P. 80C petition appealing the final

decision of the Board of Trustees, Maine Public Employees Retirement System

("System").

Facts

The petitioner, Judith Whitley, is an Educational Technician II who works for

School Union 52. When hired in 1995, she became eligible to participate in the

MainePERS Retirement and Group Life Insurance ("GLI") Program. She was not

informed about this availability until 1997. The petitioner joined the System and

automatically became insured under the GLI Program. She was required to file an

application within 31 days, and she indicated she did so in March of 1997. On June 5,

1997, she filled out a Designation of Beneficiary Group Life Insurance Program form.

The Board of Trustees' final decision states that the petitioner submitted an

enrollment form for GLI, which was apparently never processed. Under the facts

section of the decision, (R. 33.6), it states that the petitioner filled out an enrollment

form. Under the discussion section of the decision, (R. 33.8), it notes that, "Ms. Whitley

filed an GLI application in 1997." The decision went on to contain the following

quotation, "It appears that the application was lost or not processed for some reason and Ms. Whitley was told at the time that there was no application on file." The Board found that by not taking any further action she, "effectively declined enrollment." (R. 33.8.)

The facts are confusing regarding what took place after the petitioner found out that her application was lost, not processed, and not on file.

On March 6, 1998, the System wrote the petitioner a letter indicating that School Union 52 had been informed of its responsibility to make back contributions to the System without mentioning the GLI Program. On October 27, 2004, the System wrote the petitioner a letter setting out three options in order for her to enroll for GLI: (1) pay back premiums from the date of eligibility, (2) file evidence of insurability, or (3) wait for open enrollment. The letter warned her that if she chose the "evidence of insurability" option but was denied, she could not then elect to pay back the premiums. Finally, the letter indicated that if she did not return an application by November 24, 2004, she would be considered to have refused coverage. The petitioner never responded.

In April of 2006, the System sent a form to the petitioner indicating she was not eligible for GLI because she worked part-time. In October of 2006, the petitioner was told by the System to fill out the GLI enrollment form and file evidence of insurability. She was denied coverage on the basis of her insurability due to several medical conditions.

On March 4, 2008, the Executive Director's designee affirmed the staff determination denying the petitioner eligibility for GLI. On April 30, 2006, the Executive Director's designee issued a final decision.

The petitioner filed a timely appeal to the Board of Trustees. A hearing was held on June 26, 2008. The hearing officer's report dated October 27, 2008, was appealed to the Board of Trustees and the Board's final decision on December 5 2008, affirmed the Executive Director's designee's decision. The Board's final decision concluded:

> Appellant is not eligible for GLI at this time because she did not enroll when initially offered the opportunity in 1997 and as an employee later seeking coverage, she has been denied coverage by the insurer after submitting evidence of insurability.

From this decision, the petitioner has appealed by filing this 80C petition.

Standard of Review

When the decision of an administrative agency is appealed pursuant to M.R. Civ. P. 80C, the court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. Centamore v. Dep't of Human Servs., 664 A.2d 369, 370 (Me. 1995). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." Seider v. Bd. of Exam'rs of Psychologists, 2000 ME 206, ¶ 9, 762 A.2d 551, 555 (citing CWCO, Inc. v. Superintendent of Ins., 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261). The court will "not attempt to second-guess the agency on matters falling within its realm of expertise" and judicial review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." Imagineering, Inc. v. Superintendent of Ins., 593 A.2d 1050, 1053 (Me. 1991). "Inconsistent evidence will not render an agency decision unsupported." Seider, 2000 ME 206, ¶ 9, 762 A.2d at 555. The burden of proof rests with the party seeking to overturn the agency's decision, and that party must prove that no competent evidence supports the Board's decision. Bischoff v. Bd. of Trs., 661 A.2d 167, 170 (Me. 1995).

When reviewing an agency's interpretation of a statute that is both administered by the agency and within the agency's expertise, the first inquiry is whether the statute is ambiguous or unambiguous. Competitive Energy Servs., LLC v. Pub. Utils. Comm'n, 2003 ME 12, ¶ 15, 818 A.2d 1039, 1046. If the statute is unambiguous, it is interpreted according to its plain language. Arsenault v. Sec'y of State, 2006 ME 111, ¶ 11, 905 A.2d 285, 288. If, instead, the statute is ambiguous, deference is given to the agency's interpretation if the interpretation is reasonable. Id.

Discussion

There is a great deal of confusion throughout the facts in the instant case. The confusion is compounded by the fact that the Board's decision contains the following sentence:

> In the present case, Ms. Whitley was never enrolled in GLI and thus there has been no lapse in coverage. Although this could be considered as the result of MainePERS error in not processing her 1997 application, her failure to pursue the application moots this provision's application.

(R. 33.9.)

The Board's decision concedes the System's error and places upon the petitioner an added requirement to pursue her application, a requirement not existing in the law. Apart from the interpretation of certain complex retirement statutes, the difficulty in this case arises because the petitioner's employer, School Union 52, and the System failed to properly handle her initial application. What followed was any employee's nightmare trying to navigate the complex retirement laws. The petitioner was given options she should not have been confronted with and the System made an assumption that she had "declined enrollment" because she failed to affirmatively take steps to pursue her misplaced application.

5 M.R.S. § 18058(1) states that all employees are "automatically insured" for "basic insurance" and that each "employee shall complete an application for insurance coverage within 31 days of becoming eligible." Following this language, section 1(C) states: "If an application is not completed within 31 days of the employee's first becoming eligible, the employee may subsequently apply for supplemental and dependent insurance but must produce evidence of insurability at the employee's own expense . . . ." Id. § 18058(1)(C). The statute does not provide sanctions (i.e., the required production of "evidence of insurability") in regard to *basic insurance* if the employee fails to complete the application within 31 days. It does provide that if the application is not completed within 31 days, then subsequently applying for "*supplemental*" and "*dependent*" insurance, requires evidence of insurability. Section 1(C) does not mention basic insurance. This can only mean that the employee is automatically covered with basic insurance but needs to request the additional coverage for "supplemental and dependent insurance." See, e.g., Musk v. Nelson, 647 A.2d 1198, 1201-02 (Me. 1994) ("[A] well-settled rule of statutory interpretation states that express mention of one concept implies the exclusion of others not listed."). Because basic insurance is automatically available to the employee, there is no need to provide for requirements for subsequent enrollment, unlike supplemental and dependent insurance.

Furthermore, 5 M.R.S. § 18058(2) provides a mechanism for "written notice" for any employee not wanting to be insured. This section of the statute affirmatively sets forth the requirement that if an employee wants to decline insurance, "written notice to the employee's employing officer and to the retirement system" must be given. Id. § 18058(2). This provision further demonstrates the nature of the "automatic" enrollment for basic insurance. There is simply no evidence indicating that petitioner declined the

automatic coverage, and the System's assumption that petitioner was deemed to have declined it because she failed to fill out the application is not supported by the relevant statute.[1] The fact that the System misplaced or lost the application, or the fact that School Union 52 failed to collect the money from her to pay the basic insurance does not change this basic principle. The error by the System in not properly processing petitioner's application should not have placed greater burdens upon the petitioner to pursue her application. The Board's reasoning that petitioner's failure to pursue her application mooted the mistake made by the System is not supported by law.

Simply stated, the petitioner was automatically insured, and because she never declined this enrollment through written notice, the System must provide GLI—basic insurance—to her. The question regarding petitioner's obligation to pay for the premiums that were never collected is a concern beyond the present issue before the court, which is whether the Board erred in concluding that petitioner was not automatically insured pursuant to Maine law. Nevertheless, on remand the System should work with the petitioner and School Union 52 to determine how she is to pay for the coverage she should have had.

For the reasons stated above, the court REVERSES the decision of the Board of Trustees and REMANDS this case to the System to ensure that the petitioner is covered as required by law, and to resolve the issue of what petitioner owes the System as a result of this coverage, which should have been in place since 1997.

Dated: 7.24-cg

Joseph M. Jabar
Justice, Superior Court

---

[1] The court further notes that, as a factual matter, it appears that the petitioner originally complied with the statute by filling out the application. That application, however, was apparently never processed.

**Attorney for Petitioner**
Donald Fontaine, Esq.
P.O. Box 7590
Portland, ME  04112

**Attorney for Respondent**
Christopher Mann, Esq.
Assistant Attorney General
6 State House Station
Augusta, ME  0433

Date Filed __1/12/09__ . __Kennebec__ Docket No. ___AP-09-06___
                              County

Action __Petition For Review__
                  80C

                                         J. JABAR

Judith Whitley                    Board of Trustees, Maine Public
                            vs.   Employees Retirement System

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Donald F. Fontaine, Esq.<br>PO Box 7590<br>Portland, ME  04112-7590 | Christopher L. Mann, AAG<br>6 State House Station<br>Augusta, ME  04333-0006 |

| Date of Entry | |
|---|---|
| 2/19/09 | Petition For Review, filed 1/12/09.  s/Fontaine, Esq. |
| 2/19/09 | Administrative Record, filed 1/22/09.  s/Mann, AAG |
| 2/19/09 | Stipulation, filed 2/9/09.  s/Fontaine, Esq. |
| 2/19/09 | Notice And Briefing Schedule mailed to attorneys of record. |
| 3/31/09 | Brief of Appellant Judith Whitley, filed. s/Fontaine, Esq. |
| 4/22/09 | Response to 80C Petition, filed. s/Mann,AAG |
| 5/7/09 | Reply of Petitioner Judith Whitley, filed. s/Fontaine, Esq. |
| | Notice of setting for 7/9/09<br>sent to attorneys of record. |
| 7/9/09 | Hearing held with Hon. Justice Joseph Jabar, presiding.<br>Donald Fontaine, Esq. for the Petitioner and Christopher Mann, AAG<br>for the Respondent.<br>Oral arguments made to the Court. Court to take matter under advisement. |
| 7/24/09 | DECISION, Jabar, J.<br>For the reasons stated above, the court REVERSES the decision of the Board<br>Trustees and REMANDS this case to the System to ensure that the<br>petitioner is covered as required by law, and to resolve the issue of what<br>petitioner owes the System as a result of this coverage, which should<br>have been in place since 1997.<br>Copies to attys. of record<br>Copies to repositories |