STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, ss.                          CIVIL ACTION
                                        DOCKET NO. AP-09-11
                                        MMM – PEN – 3/29/2010

CHRISTOPHER W.
FICKETT,

            Petitioner,

v.                                      **DECISION & ORDER ON
                                        80C APPEAL**

RONALD D. MARTIN,
COMMISSIONER, MAINE
DEPARTMENT OF INLAND
FISHERIES AND WILDLIFE

            Respondent.


The matter before the Court is an appeal by the Petitioner, Christopher W. Fickett,

pursuant to 5 M.R.S. §§ 11001-11008 and Rule 80C of the Maine Rules of Civil

Procedure, from a decision by the Respondent, Ronald D. Martin, Commissioner, Maine

Department of Inland Fisheries and Wildlife ("Commissioner"), revoking the any

privilege the Petitioner had to use, receive, or apply for licenses, permits or registrations

issued by the Maine Department of Inland Fisheries and Wildlife ("IFWS"). Having

reviewed the administrative record, the parties' filings, and heard the parties' respective

arguments at hearing, a remand is necessary for IFWS to address the issues raised below.

                              BACKGROUND

On January 5, 2009, the Petitioner pled guilty to, and was convicted of, three

Class E criminal offenses with respect to unlawful acts he perpetrated while taking

beavers on Rocky Stream and Northern Stream near Township 18 ED BPP in

Washington County, Maine: (i) Hunting or Possessing an Animal or Bird During a

1

Closed Season in violation of 12 MRS § 11201(1); (ii) Failure to Visit Traps in Unorganized Territory in violation of 12 MRS § 12255(1)(B); and (iii) Closed Season Trapping in violation of 12 MRS § 12251(3). In addition, the Petitioner was also convicted of a civil violation for Failure to Label Traps in violation of 12 M.R.S. § 12254(2)(A).

The Petitioner's convictions stem from an investigation conducted by the Maine Warden Service that began when Agent Wayde Carter received information from a local trapper that someone had set beaver traps close to beaver houses in the waters of Rocky Stream and Northern Stream in possible violation administrative rules promulgated by the IFWS. *See* Me., Dep't of Inland Fish and Wildlife 09 137 CMR 004-4.01(K) (proscribing the IFWS administrative regulations governing the placement and setting of beaver traps). The Court adopts the facts as provided in the "arrest reports" of Agent Carter and Agent David Simmons. (Administrative Record Tabs 3 and 4) [hereinafter R.T.___ at ___].

As a consequence of the criminal convictions, the Commissioner delivered a letter, dated January 27, 2009, and mailed February 27, 2009, to the Petitioner informing him that he was deemed a "habitual violator," ostensibly under 12 M.R.S. § 10605(1)(A), and therefore, subject to a mandatory three-year suspension of any privilege to use, obtain, or apply for any licenses, permits, or registrations issued by IFWS under 12 M.R.S. § 10902(4)(C). The Petitioner, by and through his counsel, made a timely request for an administrative hearing pursuant to 12 M.R.S. §§ 10902(4)(C)(1) and 10905. (R.T. 7.) The IFWS obliged the Petitioner's request and held an administrative hearing before

2

the IFWS "Department Review Board"[1] on April 10, 2009. (R.T. 8.) The IFWS "Review Board" issued a May 5, 2009 Decision, authored by Deputy Commissioner Paul F. Jacques, upholding the three-year license revocation imposed by the Commissioner by letter on February 27, 2009. (R.T. 9 at 1.) The May 2009 Decision makes no mention of the Commissioner's "habitual violator" determination under 12 M.R.S. § 10605, subjecting the Petitioner to a mandatory three-year license suspension under 12 M.R.S. § 10901(4)(C), but instead analyzed the Petitioner's administrative appeal through the lens of 12 M.R.S. §§ 7077 and 10902(1), which affords the Commissioner some measure of discretion in determining the length of administrative license suspensions following criminal convictions and civil violations of state gaming laws. It is this discrepancy, among others, that compels the Court to remand the appeal back to the IFWS for additional clarification.

## STADARD OF REVIEW

The Court's review of Respondent's May 2009 administrative decision is confined by a deferential standard. Agency rulings may only be reversed or modified on 80C appeal upon a finding that the administrative ruling is: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by bias or by error of law; (5) unsupported by substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion. 5 M.R.S.A. § 11007(4)(C)(1)–(6); *see also Seider v.*

[1] The Court made inquiry to counsel for the Commisioner about the statutory authority establishing the IFWS "Review Board." None could be found in any statute or rule. At hearing, Respondent's counsel assured the Court that the "Review Board" has a historical existence within the IFWS administrative framework and regularly reviews decisions of the Commissioner on an independent basis. As represented by Respondent's counsel, the "Review Board" generally consists of Deputy Commissioner Jacques, a IFWS Game Warden, and a third employee from within IFWS not particularly responsible for enforcement, such as a wildlife biologist. The Petitioner does not question the authority of the IFWS "Review Board" and the Court is satisfied it serves its purpose independently and responsibly.

*Board of Examiners of Examiners of Psychologists*, 2000 ME 206, ¶ 8, 695 A.2d 552, 555 ("The standard of review [on M.R. Civ. P. 80C appeal] is limited to whether the [governmental agency] abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record.") (internal quotation mark omitted) (citation omitted).

The Petitioner principally challenges the "habitual violator" designation made by the Commissioner under 12 M.R.S. § 10605. When reviewing an agency's interpretation of a statute that is both administered by the agency and within the agency's expertise, the initial inquiry is whether the statute is ambiguous or unambiguous. *Competitive Energy Servs., LLC v. Pub. Utils. Comm'n*, 2003 ME 12, ¶ 15, 818 A.2d 1039, 1046. If the statute is unambiguous, it is interpreted according to its plain language. *Arsenault v. Sec'y of State*, 2006 ME 111, ¶ 11, 905 A.2d 285, 288. If, instead, the statute is ambiguous, the court will "defer to the interpretation of the agency charged with its administration, if the agency's interpretation is reasonable." *Id.* (citation omitted). The Petitioner has the burden of demonstrating that Commissioner's action was based on an error of law. *Fryeburg Health Care Center v. Dep't of Human Serv.*, 1999 ME 122, ¶ 7, 734 A.2d 1141, 1143.

## DISCUSSION

The Petitioner primarily argues that the Court should vacate Commissioner's initial three-year administrative license revocation—ostensibly made in reliance on the 12 M.R.S. § 10605 "habitual violator" designation referenced in the January 27, 2009 letter—because the Petitioner's three Class E criminal convictions stem from a single

4

"incident"[2] and the IFWS improperly viewed the 12 M.R.S. § 12254(2)(A) Failure to Label Traps violation as a criminal penalty as opposed to a civil violation.[3] It is assumed that the Petitioner's argument on appeal reflects the narrow scope of the administrative hearing offered the Petitioner pursuant to 12 M.R.S. §10902(4)(C)(2). Notwithstanding the nature of the Petitioner's attack concerning the substantive grounds guiding the Commissioner's initial license revocation and subsequent Decision, the Court finds certain procedural issues in need of additional clarification.

The IFWS Review Board's decision is difficult to rectify, when cross-referenced with the Commissioner's initial January 27, 2009 revocation notice, as to what exactly it reviewed and on what basis the Commissioner revoked the Petitioner's license privileges. The Commissioner's initial letter to Petitioner appears to employ the "habitual violator" provision provided by 12 M.R.S. § 10605(1)(A) as the basis for imposing a *mandatory* three-year revocation of license privileges administered by the IFWS. (R.T. 5 at 1.) Contrary to the "habitual violator" designation referenced in the January 2009 notification letter, however, the IFWS Review Board's May 2009 Decision suggests the Commissioner utilized 12 M.R.S. § 10902(1) to effectuate the Petitioner's license revocation, which gives the Commissioner some measure of discretion in determining the suspension period for "any conviction or adjudication for a violation" of offenses embraced by Title 12.

---

[2] Or, as Petitioner's counsel framed it during the Court's hearing on the matter, a single "course of conduct."

[3] The "habitual violator" designation will apply to any person whose record, as maintained by the IFWS, shows that "[t]he person has been convicted of 3 or more criminal violations under this Part within the previous 5-year period, *except that*, whenever more than one criminal violation is committed at the same time, multiple convictions are deemed to be one offense." 12 M.R.S. § 10605(1)(A) (emphasis added). The Petitioner expends most of his energy arguing that the exclusionary language, coupled with facts as they developed in this case, entitles him to relief under this provision. (*See* Petr.'s Br. 3-5.)

The discrepancy has consequences that would necessarily extend to define the scope of the Petitioner's IFWS administrative hearing, especially when he believed the Commissioner had revoked his license privileges based on a perceived "habitual violator" status. *See* 12 M.R.S. § 10905(3) ("The commissioner may not waive or reduce a mandatory minimum suspension period established by statute except upon determination by the commissioner that an inappropriate action contributed to or resulted in that suspension."). It is important, on remand, for the IFWS to specify the whether it predicated its review of the Petitioner's license revocation on the "habitual violator" designation under 12 M.R.S § 10902(4)(C), or on 12 M.R.S § 10902(1), which affords the Commissioner some measure of discretion in affixing the Petitioner's license revocation period.

While the Court reserves judgment on the substantive issue of whether the petitioner is properly subject to a three-year license suspension, the Court questions the Commissioner's statutory basis for imposing a *mandatory* suspension based on the Petitioner's alleged "habitual violator" status. The parties appear to agree that the statutory provision at issue, 12 M.R.S. § 10902(4)(C), is "ambiguous." As a matter of statutory interpretation, the plain text of the statute fails to support that position.

Section 10902(4)(C) provides, "[i]f a habitual violator . . . is convicted or adjudicated of any violation of this Part, the Commissioner shall revoke all licenses and permits held by that person." *Id.* The Court construes this language to mean that a mandatory revocation can occur only *after* a person who has already been classified as a "habitual violator" is convicted or adjudicated of another Title 12 violation, rather than imposing mandatory administrative sanction on a person who merely qualifies as a "habitual violator." Accordingly, the Petitioner, although having achieved "habitual

violator" status for the purposes of future violations of Part 12, was not a "habitual violator" at the time he committed the violations subject to this appeal, and therefore ,is not subject to a *mandatory* three-year license revocation.[4] *Arsenault*, 2006 ME 111, ¶ 11, 905 A.2d at 288.

The Court is mindful that the neither the Commissioner nor the IFWS appear to have conducted the proceedings to spite the Petitioner or unjustly deprive him of license privileges, especially in light of the criminal violations the Petitioner admits to have preceded the administrative revocation. However, the Court is hesitant to rule on the Petitoner's substantive claims unless and until IFWS and the Commissioner first clarify the issues raised above.

The entry is:

1. M.R. Civ. P. 80C appeal of the Petitioner, Christopher W. Fickett, is SUSTAINED. The matter is REMANDED to the Respondent, Roland D. Martin, Commissioner, Maine Department of Inland Fisheries and Wildlife, for proceedings consistent with this Order.

2. This order is incorporated into the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: March 29, 2010

M. Michaela Murphy
Justice, Maine Superior Court

Order entered upon the docket on 4/7/10.

---

[4] At hearing, Respondent's counsel provided the Court with a copy of *New England Water Center, Inc. v. Dep't of Inland Fisheries and Wildlife*, 550 A.2d 56, 58-9 (Me. 1988), to support a claim that because the Petitioner failed to specifically raise the "plain language" argument concerning 12 M.R.S. § 10902(4)(C), he thus failed to preserve the issue for the purposes of his M.R. Civ. P. 80B appeal. *See id.* ("Issues not raised at the administrative level are deemed unpreserved for appellate review."). However, the Court's decision on the merits of that argument will await clarification from the Commissioner as required in this Order.

7

STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, ss.                                    CIVIL ACTION
                                                  DOCKET NO. AP-09- 11


CHRISTOPHER W.
FICKETT,

              Petitioner,

        v.                                        **DECISION ON M.R. CIV.**
                                                  **P. 80C APPEAL**

RONALD D. MARTIN,
COMMISSIONER, MAINE
DEPARTMENT OF INLAND
FISHERIES AND WILDLIFE

              Respondent.


The matter before the Court is an appeal by the Petitioner, Christopher W. Fickett,

pursuant to 5 M.R.S. §§ 11001-11008 and Rule 80C of the Maine Rules of Civil

Procedure, from a decision by the Respondent, Ronald D. Martin, Commissioner, Maine

Department of Inland Fisheries and Wildlife ("Commissioner"), revoking the Petitioner's

privileges to use, receive, or apply for licenses, permits or registrations issued by the

Maine Department of Inland Fisheries and Wildlife ("IFWS") for a duration of three

years. Having reviewed the administrative record, the parties' filings, and the

Commissioner's supplemental decision, the Court denies the petitioner's appeal.

## BACKGROUND

On May 26, 2010, IFWS issued a supplemental decision to clarify the issues

raised by the Court in its previous order remanding this matter. *See Fickett v. Martin,*

BANSC-AP-09-11 (Me. Super Ct., Pen. Co, Mar. 29, 2010). From the May 2010

decision, the Court finds the following information pertinent to the final disposition of the Petitioner's M.R. Civ. B. 80C appeal:

The Petitioner was charged with violating (i) 12 M.R.S. § 11201(1), Hunting or Possessing an Animal or Bird During a Closed Season; (ii) 12 M.R.S. § 12251(3), Closed Season Trapping; and (iii) 12 M.R.S. § 12255(1)(B), Failure to Visit Traps in Unorganized Territory. (Record at Tab 1) [hereinafter R. at T. ____.] Investigating IFWS game wardens also issued the petitioner a civil violation for Failure to Label Traps in violation of 12 M.R.S. § 12254(2)(A). On January 5, 2009, the Petitioner pled guilty to, and was convicted of, each of the aforementioned Class E criminal offenses.

Evident from the both the administrative record and IFWS's supplemental decision, the citations stem from an investigation spearheaded by Officer Wayde Carter beginning on November 2, 2008, after a local trapper notified IFWS wardens of potential illegal trapping activities along Rocky Stream and Northern Stream near Township 18 ED BPP in Washington County, Maine. (*See* R. at T. 2.) Officer Carter issued summonses for each of the criminal violations while meeting with the Petitioner at his residence in Clifton, Maine on December 19, 2009.[1] (R. at T. 1.)

As a consequence of the criminal convictions, the Commissioner delivered a letter, dated January 27, 2009,[2] to the Petitioner informing him that the IWFS considered him a "habitual violator," and therefore, subject to a mandatory three-year suspension of any privilege to use, obtain, or apply for any licenses, permits, or registrations issued by

---

[1] Officer James Martin cited the petitioner for a civil violation of 12 M.R.S. § 12254(2)(A), failure to label traps, on November 6, 2008. Apparent from the May 2010 supplemental decision, the civil violation issued by Officer Martin has no bearing on petitioner's "habitual violator" designation. *See* 12 M.RS. 10605(1)(A) (defining a "habitual violator" as a person "convicted of 3 or more criminal violations [of fishing, gaming, or trapping laws] within the previous 5-year period")

[2] The date of the letter appears to be a typographical error and should read "February 27, 2009."

IFWS under 12 M.R.S. § 10902(4)(C).[3] The Petitioner, by and through his counsel, made

a timely request for an administrative hearing pursuant to 12 M.R.S. §§ 10902(4)(C)(1)

and 10905. (R.T. 7.) The IFWS obliged the Petitioner's request and held an

administrative hearing before the IFWS "Department Review Board" on April 10, 2009.

(R.T. 8.) The Review Board issued a May 5, 2009 Decision, authored Deputy

Commissioner Paul F. Jacques, upholding the three-year license revocation imposed by

the Commissioner by letter on February 27, 2009. (R.T. 9 at 1.) The May 2009 Decision

failed to specify the basis for revoking the Petitioner's license privileges. *Compare* 12

M.R.S. §§ 10605(1)(A) (affording the Commissioner a level of discretion in affixing a

license revocation period) *with* 10901(4)(C) (requiring a mandatory revocation of license

privileges of no less than 3 years); (R. at T. 9.) Subsequent to the Court's order on

remand, the IFWS Review Board provided the May 26, 2010, supplemental decision that

provided the factual and procedural clarifications necessary to complete appellate review.

## STANDARD OF REVIEW

The Court's review of Respondent's May 2009 administrative decision is

confined by a deferential standard. Agency rulings may only be reversed or modified on

80C appeal upon a finding that the administrative ruling is: (1) in violation of

constitutional or statutory provisions; (2) in excess of the statutory authority of the

agency; (3) made upon unlawful procedure; (4) affected by bias or by error of law; (5)

unsupported by substantial evidence on the whole record; or (6) arbitrary or capricious or

characterized by abuse of discretion. 5 M.R.S.A. § 11007(4)(C)(1)–(6); *see also Seider v.*

*Board of Examiners of Examiners of Psychologists*, 2000 ME 206, ¶ 8, 695 A.2d 552,

3

555 ("The standard of review [on M.R. Civ. P. 80C appeal] is limited to whether the [governmental agency] abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record.") (internal quotation mark omitted) (citation omitted).

The Petitioner challenges the "habitual violator" designation made by the Commissioner under 12 M.R.S. § 10605. When reviewing an agency's interpretation of a statute that is both administered by the agency and within the agency's expertise, the initial inquiry is whether the statute is ambiguous or unambiguous. *Competitive Energy Servs., LLC v. Pub. Utils. Comm'n*, 2003 ME 12, ¶ 15, 818 A.2d 1039, 1046. If the statute is unambiguous, it is interpreted according to its plain meaning. *Arsenault v. Sec'y of State*, 2006 ME 111, ¶ 11, 905 A.2d 285, 288. If, instead, the statute contains ambiguous language, the court will "defer to the interpretation of the agency charged with its administration, if the agency's interpretation is reasonable." *Id.* (citation omitted). The Petitioner has the burden of demonstrating that Commissioner's action was based on an error of law. *Fryeburg Health Care Center v. Dep't of Human Serv.*, 1999 ME 122, ¶ 7, 734 A.2d 1141, 1143.

DISCUSSION

At this point in the litigation, the IFWS has clarified that the Petitioner's "habitual violator" status stems from the three summonses issued by Officer Carter on December 19, 2010. The Commissioner's initial decision, in part, created confusion as to how the petitioner could be deemed a "habitual violator" within the ambit of 12 M.R.S. § 10605(1)(A), and therefore subject to a mandatory three-year revocation of trapping

4

privileges under 12 M.R.S. § 10902(4)(C), given the language of its May 5, 2009, decision:

> Mr. Fickett was convicted of Hunt or Possess animal or bird during closed season and closed season on trapping violation on 10/31/2008, failure to visit traps in unorganized town on 11/5/2008, and fail to label traps on 11/6/2008. These violations were all Class E offenses and, by its' [sic] nature, show that Mr. Fickett acted with willfulness, recklessness, and carelessness.

(R. at T. 9.) On remand, the IFWS Review Board provided the Court with a more detailed explanation of its findings:

> Based on the evidence presented [at the April 10, 2009, hearing], the Review Board found that Mr. Fickett was convicted on January 5, 2009 of a Class E offense of Hunting or Possession of Wild Animals During Closed Season (12 M.R.S. § 11201)(committed on November 14, 2008, when Mr. Fickett was found in possession of a beaver illegally taken by hunting out of season); a Class E offense of Trapping During Closed Season (12 M.R.S. § 12251) (committed on October 31, 2008 when Mr. Fickett set traps during the closed season for beaver); and a Class E offense for Failure to Tend Traps (12 M.R.S. § 12255) (committed on November 5, 2008 when Mr. Fickett failed to tend traps set on October 31, 2008 within five days as required by law).

(IFWS Review Board May 26, 2010 Supplemental Decision at 2-3.)

There is no question that the petitioner committed three substantive criminal offenses during the course of IFWS's investigation into illegal trapping activities along Rocky Stream in the late fall of 2008. Officer Carter's report supports the IFWS Review Board's finding that each of the Class E criminal violations occurred on distinctly different occasions. (*See* R. at T. 2.) Consequently, petitioner's argument that the 12 M.R.S. § 11201 possession offense and the 12 M.R.S. § 12251 closed season trapping

offense were "committed at the same time," and therefore, constitute "one offense" for the purposes of applying the habitual violator provision, fails to withstand analysis. *See* 12 M.R.S. § 10605 (noting that the criminal violations "committed at the same" time will be deemed "one offense").[4] Consequently, at the time of the Commissioner's January 27, 2009, notice of revocation, (R. at T. 5), the IFWS could properly characterize the Petitioner as a habitual violator. *See* 12 M.R.S. § 10605(1)(A) (defining a "habitual violator" as a person "convicted of 3 or more criminal violations . . . [of fishing, hunting or trapping laws] within the previous 5 year period.")

The only outstanding issue remaining in this litigation is whether the IFWS Review Board properly interpreted the mandatory revocation provision provided under 12 M.R.S. 10902(4)(C) in upholding the three-year revocation of the petitioner's license privileges. The Law Court has advised that "issues not raised at the administrative level are deemed unpreserved for appellate review." *New England Whitewater Ctr., Inc. v. Dep't of Inland Fisheries & Wildlife*, 550 A.2d 56, 58, 60 (Me. 1988); *but see Farley v. Town of Washburn*, 1997 ME 218, ¶ 5, 704 A.2d 347, 349 (noting that a court may consider issues "where there is a sufficient basis in the record to alert the court and any opposing party to existence of the issue"). The record discloses that the Court, not the Petitioner, raised the statutory interpretation issue discussed during the March 23, 2010 hearing on this matter. Aside from the petitioner's failed effort to raise, and therefore, properly preserve the statutory interpretation issue raised by the Court, the benefit of interpreting a statute ultimately inures to the agency charged with its administration and

---

[4] The petitioner's argument appears to have originated from the fact that Officer Carter initially noted the 12 M.R.S. § 11201(1) possession violation and the 12 M.R.S. § 12251(3) closed season trapping violation to have both occurred "on or about October 31, 2008." (R. at T. 1.)

the Court finds the Commissioner's interpretation of 12 M.R.S. § 10902(4)(C) reasonable under the circumstances of this case. *Arsenault*, 2006 ME 111, ¶ 11, 905 A.2d at 288.

The Court, in its preceding Order remanding this matter to the Commissioner, intimated that the language of 12 M.R.S. § 10902(4)(C) could not be interpreted to mean that a "mandatory" suspension necessarily follows from conviction of three violations without evidence of an additional conviction or adjudication of fishing, hunting, or trapping laws. *See Fickett*, BANSC-AP-09-11, *6-*7; 12 M.R.S. § 10902(4)(C) ("If a habitual offender, as defined in section 10605, subsection 1, is convicted or adjudicated of a [fishing, hunting or trapping] violation . . . . [t]hat person is ineligible to have a license for a period . . . [of] 3 years from the date of revocation."). Despite the Court's initial impression of 12 M.R.S. § 10902(4)(C), the Court now construes this provision to be ambiguous as to whether a person deemed a "habitual violator" must perpetrate, and be convicted of, an additional fishing, hunting, or trapping violation before the Commissioner may employ a three-year license revocation, or whether, as is the case here, the Commissioner may use the three violations that constituted the substantive basis for a "habitual violator" designation as the trigger-point for a "mandatory" license revocation. The Commissioner has adopted the latter view consistent with IFWS's general mandate to "preserve, protect, and enhance the inland fisheries and wildlife resources of this State," 12 M.R.S. § 10051, and that effort invariably includes denying permits to those people who habitually violate the gaming laws. (*See* IFWS Review Board May 26, 2010 Supplemental Decision at 3.) Insofar as the mandatory revocation provision contained in 12 M.R.S. § 10902(4)(C) does not prohibit the Commissioner from imposing a three-year license revocation in the case where a licensee has been

convicted of "3 or more criminal violations" and has thereby achieved habitual violator status in a relatively short period of time, the Court finds the Commissioner's imposition of a mandatory license revocation reasonable and entitled to deference for the purposes of appellate review. *Arsenault*, 2006 ME 111, ¶ 11, 905 A.2d at 288; *see also S.D. Warren Co. v. Bd. Of Envtl. Prot.*, 2005 ME 27, ¶¶ 4-5, 868 A.2d 210, 213-14.

The entry is:

1. The Petitioner's, Christopher W. Fickett, M.R. Civ. P. 80C appeal is DENIED.

2. This order is incorporated into the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: August 10, 2010

M. Michaela Murphy
Justice, Maine Superior Court

8

Date Filed __6/10/09__ __Penobscot__ Docket No. __AP-2009-11__
County

Action __Rule 80C Appeal__

ASSIGNED TO JUSTICE MICHAELA M. MURPHY

CHRISTOPHER FICKETT                vs.    MAINE DEPARTMENT OF INLAND FISHERIES
                                          AND WILDLIFE

| Plaintiff's Attorney | Defendant's Attorney |
| --- | --- |
| MATTHEW ERICKSON, ESQ.<br>P O BOX 682<br>BANGOR ME 04402-0682<br>P O BOX 3370<br>BREWER ME 04412 | Mark A. Randlett, Assistant Attorney Genera<br>6 State House Station<br>Augusta, Maine 04333-0006 |

Date of
Entry